**STATE of Missouri, Plaintiff-Respondent,**

v.

**Charles TATE, Defendant-Appellant.**

**No. 37214.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

Sept. 14, 1976.

Motion for Rehearing and for Transfer to
Supreme Court Denied Nov. 12, 1976.

Joseph W. Warzycki, James C. Jones, Robert G. O'Blennis, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Ronald B. Safren, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

KELLY, Judge.

Charles Tate, the appellant, was convicted in the Circuit Court of the City of St. Louis of Murder in the First Degree, § 559.-010 RSMo 1969, and Robbery in the First Degree by Means of a Dangerous and Deadly Weapon, § 560.135 RSMo 1969. On appeal he does not question the sufficiency of the evidence to support the conviction, nor the validity of the sentences imposed, to-wit, life imprisonment on the Murder in the

First Degree charge and ten years imprisonment on the Robbery in the First Degree by Means of a Dangerous and Deadly Weapon charge.

█ Two points are presented to this court for review. First, that the trial court erred in refusing his requested instruction "C" for the reason that there was evidence showing that he may not have understood what he was saying or doing by reason of mental defect or by drug addiction or intoxication. Because appellant has failed to set out the proffered instruction which the trial court refused to submit to the jury in the argument portion of his brief as required by Rule 84.04(e) this point is not preserved for review. *State v. Lynch,* 528 S.W.2d 454, 461[13] (Mo.App.1975). We do not review matters relating to the giving or refusal of instructions under the "Plain Error" rule, "unless the trial court has so misdirected or failed to instruct the jury on the law of the case so that the misdirection or failure to instruct causes a manifest injustice." *State v. Broomfield,* 510 S.W.2d 843, 845[1] (Mo. App.1974). We do not find that to be the situation here.

Appellant's second point is that the trial court erred in denying his motion for mistrial when Samuel Gimpelson identified him in court on the ground that he had not been informed that this witness would be an identification witness in accordance with the requirements of Rule 25.32, V.A.M.R.

Prior to disposing of this point it is appropriate that we now refer briefly to the evidence adduced by the State in support of the charges on which this appellant was tried and found guilty.

On November 15, 1974, at approximately 3:15 p. m., Joseph, Simon, Samuel and Hyman Gimpelson, brothers and co-owners of the Ajax Iron and Metal Company, were in the company office at 2747 Papin Street in the City of St. Louis. Sheldon H. Marcus, a company supervisor, was also in the office with the Gimpelsons when Leroy Taylor

entered, armed with a revolver and announced: "This is a robbery. Back up." At this point in time another man, identified as Charles Tate, the appellant, entered the office armed with a shotgun. Mr. Taylor walked up to Hyman Gimpelson, who was standing by a counter in the office, and grabbed $700.00 from an open cash drawer, and demanded more money. Hyman Gimpelson opened a combination safe but no more money was found there. As the two robbers were leaving Hyman Gimpelson tripped over an acetylene torch and knocked down Mr. Taylor, and while both men were on the floor appellant fired the shotgun he was holding and Hyman Gimpelson was felled by two shotgun blasts fired by appellant. Samuel and Simon Gimpelson were wounded by shots fired from the revolver by Mr. Taylor. Hyman died from his wounds and Simon Gimpelson was confined to a hospital for a long period of time by reason of the wounds he received at the time of the robbery.

At trial Sheldon Marcus and Samuel Gimpelson identified the appellant as the man who wielded the shotgun during the robbery. Also introduced into evidence was a statement the appellant had given to the authorities admitting participation in the robbery and implicating a third person as the driver of the getaway car.

The basis for appellant's second point of alleged trial error came about in the following manner. Samuel Gimpelson, whose name appears as a witness for the State on the Indictment on which the cause came on for trial and as the victim of the assault charged in Count III of the Indictment,[1] was called as a State's witness. During the course of direct examination by the Assistant Circuit Attorney the following occurred:

"Q. (By Mr. Safren). What did you see, then?

A. I saw one man come in with the pistol raised in his hand, and I saw

---

1. Appellant was charged in Count III of the Indictment with assault with intent to kill with malice aforethought Samuel Gimpelson and with the same offense in Count IV as against

Simon Gimpelson; each charge was submitted to the jury but verdicts of not guilty were returned on both of these Counts.

another man come in with the shotgun—station himself on the other side of the counter.

Q. Now the man with the shotgun, will you describe him for us?

A. The gentleman right here.

Q. Do you see him seated here?

A. Yes.

Q. Can you tell us how he is dressed today?"

At this point defense counsel requested permission to approach the bench and a lengthy colloquy between the trial court and respective counsel followed, during which appellant's counsel objected to any testimony by Mr. Gimpelson relative to the identification of appellant as one of the robbers. Reduced to its simplest terms, the thrust of this objection was that appellant's counsel, prior to trial, had filed a motion for discovery and a motion to suppress identification; that in complying with his request for discovery the State did not advise him that Samuel Gimpelson would be able to identify appellant as a participant in the robbery and, therefore, he was deprived of the opportunity to adduce evidence from this witness on his motion to suppress identification prior to trial and thereby obtain a ruling on whether Mr. Gimpelson's identification of appellant was the result of suggestive identification procedures and his in-court identification subject to being excluded at trial. He complained that he was faced at trial with a new issue of identification of which he had not been forewarned and this constituted a violation of at least the spirit of the discovery procedures whose purpose was to allow both sides to know adequately what they faced at trial.

The Assistant Circuit Attorney advised the trial court that Mr. Gimpelson had not attended the lineup because he was in the hospital at the time it was conducted and that the witness had not confronted the appellant between the date of the robbery and the time he entered the courtroom to testify in the trial. The trial court indicated to appellant's counsel that he was about to overrule his objection and offered appellant's counsel the opportunity to voir dire the witness out of the hearing of the jury and defense counsel announced that if the trial court was going to overrule his motion he would request a mistrial, and if the trial court was going to overrule this motion for a mistrial he would then voir dire the witness as suggested by the trial court.

The witness was voir dired and testified that at no time did he see a lineup in connection with this incident. He was shown some pictures by some police officers while in the hospital but he was in no condition at that time to recognize anyone. He admitted that he had given a statement to the same police officers who interviewed him in the hospital that he could identify both men who took part in the robbery. He did not know if the police officers wrote down the statement he gave them, although he thought that they probably did. He denied seeing any pictures since he had recovered from his wounds. He had not seen the appellant between the time of the robbery and when he saw him in court when he entered the courtroom to testify. He never heard the name "Charles Tate" until "today." He knew after the lineup that at least some of the people in the lineup had been identified as the robbers and when he walked into the courtroom to testify he knew that one of the men who had been identified was being tried. He was able to identify the appellant because, "I looked at the man for ten minutes straight before I got shot." He had not talked with either Mr. Marcus or his brother Joe about the case until "this morning," but he talked with Mr. Safren, the Assistant Circuit Attorney handling the trial, "yesterday" at which time he told Mr. Safren that he could identify in court the man who shot him. He also told Mr. Roth, Mr. Safren's investigator that he could identify the man who shot his brother, and that statement he made to Mr. Roth "this morning." He knew when he walked into the courtroom that he could pick out the man who had the shotgun.

At the conclusion of this voir dire defense counsel renewed the same objection previ-

ously made, claimed that appellant had been prejudiced in front of the jury and asked for a mistrial. Mr. Safren said that he did not know until that morning that this witness could identify the appellant and defense counsel responded that if that were true, Mr. Safren should have then advised him of this fact. The trial court took the position that under the evidence there was no showing that this witness' identification of the appellant was tainted. Referring to appellant's motion for discovery the trial court remarked that it would seem, in the broadest sense, that the only request contained in the motion for discovery relevant to this point was that which asked for the names and last known addresses of persons whom the State intended to call as witnesses at any hearing or at trial, together with a request for their written or recorded statements and existing memoranda reporting or summarizing part or all of their oral statements, and these had been supplied appellant. The trial court thereupon ruled that there was nothing in the witness' testimony to indicate any pre-trial confrontation which would be suggestive or give rise to a likelihood of irreparable mis-identification; that the testimony indicated that the in-court identification was not tainted by any independent pre-trial confrontation nor on any suggestion other than the knowledge of the witness based upon his viewing of the appellant at the time of the robbery. Appellant's motion for mistrial was denied and Mr. Gimpelson proceeded to testify and identify the appellant as the man holding the shotgun during the perpetration of the robbery and the murder of his brother.

■ In the trial court the appellant's objection was that the state violated Rule 25.32 V.A.M.R. by failing to disclose to him the fact that Samuel Gimpelson would be able to identify the appellant as one of the robbers at trial, and that he was thereby deprived of the right to call him as a wit-

ness at a hearing on a motion to suppress identification to ascertain whether his in-court identification testimony should be excluded.[2] By reason of the failure of the appellant to incorporate in this transcript his motion for discovery we glean, from the trial judge's remarks, that the only item sought in said motion germane to the issues here was the request for the names and addresses of persons the state intended to call as witnesses at any hearing or at trial, together with their written or recorded statements and existing memoranda reporting or summarizing part or all of their oral statements. As we have heretofore pointed out, Samuel Gimpelson's name appeared in at least two places on the Indictment in this case; in Count III thereof and again as an endorsed witness in the cause. What response the state made to the aforesaid question directed to it by appellant's motion for discovery we do not know except the record reveals that in a pre-trial conference appellant's counsel, when asked by the trial court if defendant's motion for discovery had been fully complied with, announced: "Yes, Your Honor." From this we may assume that Samuel Gimpelson's name and address was furnished to the appellant in response to his motion for discovery. From other portions of the record we also discern that while Samuel Gimpelson was still in the hospital recovering from his wounds he made a statement to some unidentified police officers that he could identify both of the men who participated in the robbery. While he was of the opinion that the police officers to whom he gave the statement "probably" wrote it down, he was not certain. If this statement was reduced to writing or memorandum form we also deduce that it was neither furnished to the appellant in response to his motion for discovery, nor incorporated in the copy of the police report appellant's counsel had, and that the Assistant Circuit Attorney had no knowledge of the existence of any writing

---

2. Appellant sought to enlarge the wrong complained of by asserting in this court for the first time that by reason of the state's failure to advise him that this witness was an "identification witness" he was inhibited in preparing properly for cross-examination of the witness. We do not consider this newly conceived grounds. *State v. Larkins,* 518 S.W.2d 131, 134[1] (Mo.App.1974).

or memoranda containing this statement nor the identity of the police officers to whom the statement was made.

■ While Rule 25.32(A)(1) requires that upon request the state furnish defendant the items sought in that request we have gleaned was a part of appellant's motion for discovery, including the written or recorded statements, and existing memoranda reporting or summarizing part or all of their oral statements, it does not require the state to categorize its witnesses into various classifications, i. e., "identification witnesses." Its duty is to furnish those items if they exist, not summarize what each witness' testimony will be at trial.

■ If we assume, without deciding, that the state in this case violated the spirit and the letter of the Rule, the appellant was nonetheless afforded the opportunity to interrogate Mr. Gimpelson to ascertain whether his in-court identification testimony was tainted by any suggestive procedures so as to preclude his testifying at trial and identifying appellant as one of the robbers if the trial court found that it was so tainted.

Further, despite the provision for sanctions contained in Rule 25.45 V.A.M.R. upon the failure of a party to comply with discovery, the only relief appellant sought was a mistrial. While he objected to the witness' testimony, he did not specifically request the trial court to exclude the testimony of Mr. Gimpelson, as he might have done, nor did he ask for a continuance so that he could better prepare his examination of the witness. The cases are legion which hold that the granting of a mistrial is a remedy so drastic that it is reserved for those cases where the error is of such dimensions and so prejudicial that the effect of the error cannot be removed in any other way that we need not cite them here. Therefore, even were we to assume that the state violated the spirit, or the letter of the discovery rule, (which we do not) we find no error in the denial by the trial court of appellant's request for a mistrial under the circumstances of this case as reflected in this record.

We have considered those portions of the record specified in Rule 28.02 for error and find none.

We affirm.

SIMEONE, P. J. and GUNN, J., concur.