STATE of Missouri,
Plaintiff-Respondent,

v.

Ira Elmer BRYANT,
Defendant-Appellant.

No. 10779.

Missouri Court of Appeals,
Southern District,
Division One.

June 19, 1979.

John D. Ashcroft, Atty. Gen., Steven Scott Clark, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

John B. Newberry, Springfield, for defendant-appellant.

GREENE, Judge.

Defendant Ira Elmer Bryant was convicted in the Circuit Court of Greene County of the crimes of burglary and stealing, after trial by jury. Defendant was thereafter sentenced by the trial court under the authority given it by the Second Offender Act, § 556.280, RSMo 1969, V.A.M.S., to three years imprisonment on each charge, with the sentences to run concurrently. Defendant appeals from the judgment and sentence. We affirm the judgment of the trial court.

The state's evidence was as follows. On March 13, 1977, at about 4 a. m., David Haun, a Springfield police officer, after receiving a call from a security officer of the Kerr-McGee Company, arrested defendant. The Rainbow Paint Company was located about 2 blocks south of the place of arrest. After advising defendant of his *Miranda* rights, Haun searched defendant. Defendant had a number of items in his pockets among which were a paint can opener (state's exhibit 1), a screwdriver (state's exhibit 2), a pair of Craftsman pliers (state's exhibit 3), a letter opener (state's exhibit 4), a pocket calculator, which was in a dark brown or black colored vinyl case, and a pocket knife. The calculator was approximately 4 to 5 inches in length and 2½ to 3 inches wide. Defendant told Haun that he had found the letter opener in the street, and that he used the other items in his scrap metal business. Defendant's clothing was soiled; he had fresh, wet, red clay on his boots, and his hands were cut and bleeding. Defendant also told Haun that the reason he was at the location where he was arrested was that his pickup truck had run out of gasoline, and that he had gone to a friend's house to try and obtain help. Defendant had been drinking, but was not intoxicated. Defendant's pickup truck was located in front of the Rainbow Paint Company by Police Officer Terry St. Clair. A friend of defendant's, Rocky Jordan, was in the truck. He was asleep, and when awakened, appeared to be intoxicated.

Police Officer Ralph Laughlin, while on routine patrol in the late evening of March 13, 1977, discovered that some glass had been broken out of a window on the north side of the office area of the Rainbow Paint

Company. He notified police headquarters and, after a back-up arrived, Laughlin and Officer Max Long entered the building. There was broken glass on the table and chairs, and a portion of a concrete block was on the floor. Several drawers had been pulled out of a desk and papers were on the floor. The glass panes that had been broken out of the window had jagged edges.

John Carroll, the president and manager of Rainbow Paint Company, testified that he had been at the plant at about 11:30 on the morning of March 12, 1977, and that before leaving he had checked all of the doors and windows. They were all secure and nothing in the interior of the building had been disturbed. Late on the evening of March 13, he was contacted by Springfield police officers and was advised that there had been a break-in at the building. He went to the scene and observed the broken windows and the ransacked desk drawers and saw that "everything in general was in a mess". He determined, at that time, that a stereo record player was missing. He also noticed the hose on a 500 gallon solvent tank, which looked like a gas tank, was cut and that some gallon cans had been moved out of the laboratory area. Later, at the police station, he identified state's exhibits 1, 2 and 3 as items owned by him or the company that had been in his desk on March 12, 1977. He identified exhibit 4 (the letter opener) as the property of an employee, Robert F. Hoelcher. He had not given anyone permission to remove the items in question from the building.

Larry Dean Gilmore, another employee, testified, over the objection of defendant, that he was the owner of a pocket calculator, approximate size 1 inch by 2½ inches by 5 inches, in a black vinyl case, and that he kept it in the bottom right-hand drawer of his desk in the laboratory room. He checked the desk drawer on March 14, 1977, and the calculator was gone. He had not given anyone permission to remove the calculator from the building.

Defendant's evidence was as follows. Connie Sue Bryant, wife of defendant, said her husband left the family home about 3:30 a. m. on March 13, 1977, with a friend by the name of Rocky Jordan. Ira was dirty and "skinned up" from working on a transmission. He was wearing muddy cowboy boots and left in his red pickup. After being advised the next morning as to the whereabouts of the truck, she went to the Rainbow Paint Company. Rocky was still in the truck drinking beer. She could not find the car keys but the police gave them to her later. The truck was out of gas. It started after she put gas in it.

Defendant then testified. He said that he, accompanied by Rocky Jordan, left his home around 3:30 a. m. on March 13, 1977. Jordan was a friend who had been staying at defendant's home. Defendant had been working on his pickup earlier that evening. His hands were scraped, cut and bleeding from working on the transmission, and he "was just in a flat mess". He worked on the pickup from about 4:30 p. m. to 11:15 p. m. on March 12, 1977. Defendant then went to Salt's tavern, drank a beer and returned home. He sat around arguing with Rocky until about 3:30 a. m. Rocky wanted defendant to take him to a friend's house on the north side and defendant agreed. They started out in the pickup but ran out of gas in front of the Rainbow Paint Company about 3:45 a. m. Defendant left the truck to look for a friend to take him to get some gas. While walking along the edge of the street, he saw state's exhibits 1 through 4 scattered along the road down the street from the Rainbow Paint Company. He picked them up and put them in his back pockets. He had a calculator in his jacket pocket that belonged to his sister-in-law. Defendant walked to the corner of High and Holt streets to the home of a friend, and knocked on the door but could not arouse anyone. He started back down High Street and, at that time, was arrested by Officer Haun. Haun searched him and took state's exhibits 1 through 4 out of his pockets. Haun did not take the calculator, nor did he ask defendant where he got it. Defendant was booked into jail and was released on bond. He testified that he returned the calculator to his sister-in-law who lived in North Kan-

sas City. He said the calculator was about 6 inches long, 2 inches wide and ¾ inch thick.

On cross-examination concerning the calculator, the following exchange occurred between the prosecutor and defendant.

"Q. I suppose you had the calculator with you while you were working on the truck? A. No, sir, but when I went in, well, I took it with me. If I had a chance to buy anything, I'd buy it. Q. Well, what chance was there to buy anything at 3:45 to 4:00 on North Golden? A. You never know when you can buy something."

Defendant denied breaking into the Rainbow Paint Company and stealing state's exhibits 1 through 4. On further cross-examination, defendant admitted he had been convicted of the crime of cashing a forged check in 1969.

After the testimony was concluded, the trial court, as a part of its written instructions to the jury, gave Instruction No. 11 (MAI–CR 3.58) at the request of the defendant. Defendant did not request the giving of MAI–CR 3.60. After conviction, defendant timely filed a motion for a new trial, which was overruled by the trial court.

Defendant raises four points on appeal, which are as follows.

### POINT ONE

■■■ Defendant contends that the trial court erred in admitting into evidence the testimony of Larry Dean Gilmore because evidence concerning a pocket calculator, which was missing from his desk in the office of the Rainbow Paint Company, put in issue a crime not charged in the information, to the prejudice of defendant. If the testimony of Gilmore concerning the stolen calculator was generally competent on any theory, for any purpose, the trial court cannot be convicted of reversible error for admitting it. *State v. Scown,* 312 S.W.2d 782, 789 (Mo.1958). The evidence regarding the stolen calculator was not, in our judgment,

proof of a separate crime but was corroborative evidence constituting a part of one transaction, i. e., the stealing of articles from the interior of the building of the Rainbow Paint Company, and also was evidence to connect defendant with the stolen articles. As such, it was admissible. *State v. Johnson,* 447 S.W.2d 285, 291 (Mo.1969).

### POINT TWO

■■■ Defendant next contends that the trial court committed reversible error in overruling his objection to the testimony of Larry Gilmore, for the reason that the prosecuting attorney failed to make timely disclosures to defendant of the existence or substance of statements made to the prosecutor by Larry Gilmore concerning the pocket calculator, despite defendant's request for disclosure under Rule 25.32.[1] The rule in question, in subsections A(1) through (9) lists nine different types of information that the state shall disclose to defendant's counsel upon written request. Subsection A(1) of the rule refers to disclosure of the names and last known addresses of persons whom the state intends to call as witnesses, together with their written or recorded statements and existing memoranda reporting or summarizing part or all of their oral statements. The transcript in this case shows the following docket entry in the court's minutes. "April 11, 1977 Defendant's request for disclosure by state without court order filed." However, a copy of the request is not included in the transcript, and we are not able to ascertain, as a fact, from any record filed in this court, that the state was ever asked to produce a copy of a written statement of any witness, or a summarization of their oral statement. On appeal, the transcript should contain all of the record, proceedings and evidence necessary for the determination of all questions presented to the appellate court for decision, Rule 81.12(b), and, where error is alleged, the burden is on the defendant to file a complete transcript for appellate review, including all exhibits. *State v. Dodson,* 556 S.W.2d 938, 947 (Mo.App.1977).

---

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R.

■ Defendant, despite this deficiency in the record, suggests that we seine the transcript and piecemeal glean from the record what transpired between the prosecutor's office and defendant's attorney regarding the request for disclosure, whatever it may have been, as was done in *State v. Tate*, 543 S.W.2d 514 (Mo.App.1976). Although in *Tate* the appellate court did "glean" several facts from the transcript, after defendant had failed to incorporate his discovery motion therein, the appellate court made no judicial pronouncement that "gleaning" is mandatory, and we decline to do so here. Defendant's attorney, when Gilmore was called to the stand, protested the state's failure to disclose that Gilmore would testify as to his missing calculator. He did not move for a mistrial, ask for a continuance so that he could interview Gilmore or further investigate the matter, or file a motion to suppress the evidence. Defendant did not preserve this point for review because there was no specific objection made, nor relief sought, at the time the alleged error occurred at trial. *State v. Drake*, 514 S.W.2d 653, 657 (Mo.App.1975). We have not been asked to consider this point under the doctrine of plain error, Rule 27.20(c) and we decline to do so, as such doctrine is only activated when the alleged error affects the substantial rights of the defendant and results in manifest injustice or a miscarriage of justice. *State v. Howell*, 543 S.W.2d 836, 838 (Mo.App.1976). The defendant has the affirmative burden of showing such prejudicial error, *State v. Richards*, 536 S.W.2d 779, 788 (Mo.App. 1976) and has not done so here. Exclusion of evidence not produced on discovery is a matter within the sound discretion of the trial court, and the appellate court will not reverse the trial court's decision to admit such evidence unless its admission resulted in fundamental unfairness or prejudice to the substantial rights of the defendant. No such unfairness or prejudice occurred here. Defendant vigorously cross-examined both Larry Gilmore and Officer Haun concerning the calculator missing from Gilmore's desk and the calculator taken from the defendant's person at the time of his arrest. In addition, defendant took the stand, denied burglarizing the paint company and denied stealing Gilmore's calculator. Information regarding the missing pocket calculator was revealed to defendant at the preliminary hearing long before trial, and Gilmore's name and address, as a possible state's witness, was endorsed on the amended information. Defendant had ample time to interview Gilmore and find out exactly what his testimony was going to be. He was not prejudiced by the trial court's decision to allow Gilmore to testify.

## POINT THREE

■ Defendant next claims manifest injustice as the result of the trial court giving Instruction No. 11 (MAI–CR 3.58), at defendant's request, without also giving MAI–CR 3.60 as an instruction to the jury. Defendant's attorney did not request the giving of MAI–CR 3.60, which is one of the instructions in the group labelled "Required if Requested". At time of trial, he made only a general objection to the instructions given, and made no specific objection to the failure of the trial court to give MAI–CR 3.60 in his motion for new trial. Rule 20.03 dictates the proper procedure for preserving such alleged error, and that procedure was not followed here, nor was the error preserved for review. We decline to review under the plain error doctrine, as urged by defendant. The manifest injustice standard of review in plain error cases involving instructions is applied on a case-by-case basis and, in so doing, the court should adopt a practical view of the result of the failure to give the instruction. *State v. Sanders*, 541 S.W.2d 530, 533–534 (Mo. banc 1976).

MAI–CR 3.58 (Instruction No. 11), given at the request of defendant, reads as follows:

"If you find and believe from the evidence that defendant was convicted of the offense of Uttering a Forged Instrument, you may consider that evidence for the sole purpose of deciding the believability of the defendant and the weight to be given to his testimony and for no other purpose. You must not consider such

previous conviction as any evidence that the defendant is guilty of any offense for which he is now on trial."

MAI–CR 3.60, not requested and not given, reads as follows:

"If you find and believe from the evidence that the defendant was (involved in) (convicted of) (an offense) (offenses) other than the one for which he is now on trial (and other than the offense mentioned in Instruction No. _____), you may consider that evidence on the issue of (identification) (motive) (intent) (absence of mistake or accident) (presence of a common scheme or plan) ([specify other purpose for which the evidence was received as substantive evidence of guilt]) of the defendant (and you may also consider such evidence for the purpose of deciding the believability of the defendant and the weight to be given to his testimony). (You may not consider such evidence for any other purpose.)"

In this case, the failure of the trial court to give MAI–CR 3.60 could not have misled the jury. The charges against defendant were burglary and stealing. Since the calculator was only one of the items allegedly stolen, the others being state's exhibits 1 through 4, the stealing of it was not a different crime at all, but was merely cumulative evidence of stealing. Such evidence did not "involve" defendant in an unrelated crime. We find no manifest injustice or miscarriage of justice in the failure of the trial judge to give the instruction in question.

### POINT FOUR

In his last point on appeal, defendant contends that the trial court erred by refusing to sustain appellant's motion for verdict of acquittal at the close of all of the evidence because the state had failed to make a submissible case to support the charge made against the appellant in the information. We disagree with this contention. On appeal, we consider the facts in evidence and all favorable inferences to be drawn therefrom in a light most favorable to the state, *State v. Nichelson*, 546 S.W.2d 539, 542 (Mo.App.1977) disregarding all evidence and inferences to the contrary. *State v. Franco*, 544 S.W.2d 533, 534 (Mo. banc 1976), cert. denied, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977).

Without rehashing the evidence outlined above, we deem that it was more than ample to sustain the conviction, and that the citing of like cases involving similar factual situations would have no precedential value.

The judgment is affirmed.

FLANIGAN, C. J., and TITUS, J., concur.