**STATE of Missouri, Plaintiff-Respondent,**

v.

**Giccio STEPHENS, Defendant-Appellant.**

**No. 38081.**

Missouri Court of Appeals, St. Louis District, Division Two.

Sept. 20, 1977.

Crouppen, Walther, Zwibelman & Walsh, Roy A. Walther, III, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

McMILLIAN, Presiding Judge.

Defendant Giccio Stephens appeals from a jury verdict finding him guilty of manslaughter and sentencing him to ten years imprisonment. We affirm the judgment for the reasons discussed below.

On October 29, 1974, defendant was arrested and charged with murder first degree of Danny Thomas. Defendant was convicted on October 16, 1975, of murder second degree and sentenced to twenty years imprisonment. Defendant then filed a motion for a new trial and that motion was sustained. The verdict was set aside and the case was reassigned for trial. In March, 1976, defendant was retried and found guilty of manslaughter and sentenced to ten years imprisonment. Defendant appeals.

For reversal defendant argues that the trial court erred in admitting into evidence (1) a xerox copy of the victim's emergency room hospital record because the "Best Evidence Rule" required production of the original record, (2) the same xerox copy of the hospital record under the business records exception without the required showing that the record had been kept in the ordinary course of business, (3) defendant's videotaped confession before the state had established the corpus delicti of the murder independently of the confession, and (4) the same confession because defendant had not been properly advised of his constitutional rights before making that statement.

Defendant's first point is essentially that the best evidence rule, which prohibits the introduction into evidence of secondary evidence unless it is shown that the original document has been lost or destroyed or is beyond the jurisdiction of the court without the fault of the offering party, bars the

admission of the xerox copy of the victim's hospital record. See *e. g., Martin v. Martinous,* 219 S.W.2d 667, 674–5 (Mo.App.1949); *Miller v. John Hancock Mut. Life Ins. Co.,* 155 S.W.2d 324, 327 (Mo.App.1941) quoting 20 Am.Jur., Evidence 403. If the original document is lost, then secondary evidence is properly admissible, *e. g., State v. McDaniel,* 392 S.W.2d 310, 315 (Mo.1965); *Bolling Co. v. Barrington Co.,* 398 S.W.2d 28, 31 (Mo.App.1965). In *McDaniel* defendant objected to the admission of a thermofax copy of a piece of paper on which a witness had written down the license number of the car in which defendant was riding when the automobile was leaving the scene of the robbery. There was evidence that the original piece of paper had been lost and the supreme court upheld the admissibility of the copy.

In this case Ms. Jo Ann Peterson, custodian of records of Homer G. Phillips Hospital, identified the xerox copy as having been made from the original but was unable to present the original because the original had been lost. She testified that she had brought the original to court on an earlier occasion (October 16, 1975 trial) but was now unable to locate the original in the victim's file. Two clerks from the hospital and an investigator from the circuit attorney's office had searched for the original without success. Ms. Peterson also asked the hospital to "double-check" and made a personal search herself.

■ The trial court has wide discretion in the admission of secondary evidence. *Martin v. Martinous, supra.* In this case the trial court concluded that the original hospital records appeared to be lost after a sufficiently diligent search failed to produce the missing original and admitted the xerox copy as secondary evidence. We find that the xerox copy was properly admitted into evidence because the original had been lost; thus we rule this point against defendant.

Defendant's second point is that the xerox copy was improperly admitted as a business record because an inadequate foundation was laid. Under the Uniform Business Records as Evidence Act, 28 Mo.Stat.Ann., § 490.680 (Vernon's 1952), a record is competent evidence if relevant and the custodian testifies as to its identity and mode of preparation, it was made in the regular course of business and, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission. Defendant argues that an inadequate foundation had been laid because the custodian did not actually testify that the records were kept in the regular course of business.

■ Hospital records fall within the business records as evidence exception to the hearsay rule, *e. g., Gathright v. Pendegraft,* 433 S.W.2d 299 (Mo.1968); *State v. Triplett,* 520 S.W.2d 166 (Mo.App.1976). The trial court has wide discretion in determining whether the statutory requirements for admission have been met, *e. g., State v. Jones,* 534 S.W.2d 556 (Mo.App.1976); *State v. Triplett, supra.* In this case Ms. Peterson testified that she was the custodian of records at the hospital and that as such the hospital's medical records were in her custody and care. She explained the general procedure that was followed when patients were admitted, what records were made and where they were kept. Although Ms. Peterson did not specifically state that admission records were kept "in the regular course of business" at the hospital, it was evident that her testimony was not limited to the admission record of the victim but described the standard admissions procedure.

■ The courts have been relatively liberal in interpreting the requirements for the qualification of business records, *e. g., Rossomanno v. Laclede Cab Co.,* 328 S.W.2d 677, 682–83 (Mo. banc 1959); *Allen v. St. Louis Public Svc,* 365 Mo. 677, 285 S.W.2d 663 (Mo.1956). In *State v. Durham,* 418 S.W.2d 23, 30 (Mo.1967), the supreme court held that the identification of an exhibit as part of the hospital records by the custodian of records and the examining physician was sufficient to qualify the exhibit as a business record. In this case Ms. Peterson did more than identify the record and explained some of the admissions procedure and rec-

ord-keeping. This showing was sufficient to indicate that the records were kept in the regular course of business.

We distinguish the case of *Allen v. St. Luke's Hospital*, 532 S.W.2d 505 (Mo.App. 1975), cited by defendant. In *Allen* the hospital record was introduced accompanied only by an affidavit stating that the custodian of records had prepared the complete record of plaintiff from date of admission to date of discharge. The court found the record inadmissible because there was no showing that the record had been kept in the regular course of business.

■ In addition, failure to comply with the provisions for admission of business records is not relevant when the admission of the document has not prejudiced the defendant. *Kelly v. Terminal RR Ass'n*, 315 S.W.2d 699, 703–4 (Mo.1958). In *Hood v. Heppler*, 503 S.W.2d 452, 456 (Mo.App.1973), the court held that any error in permitting defendant to read portions of the hospital record without laying a proper foundation was not prejudicial where facts disclosed were already in evidence. In this case the hospital record did not establish cause of death but stated only the symptoms of the patient on arrival and the diagnosis of "dead on arrival." The cause of death was established independently by the testimony of Dr. James Criscione, who performed the autopsy.

■ Defendant's third point is that the videotaped confession was improperly admitted into evidence because the state had failed to independently establish the corpus delicti of murder before playing the videotape to the jury. Defendant was charged with murder second degree. The corpus delicti of murder is (1) the death of a human being by (2) the criminal agency of another person and not by suicide, *e. g., State v. Parsons*, 513 S.W.2d 430, 432 (Mo. 1974). See also *State v. Brooks*, 551 S.W.2d 634, 646 (Mo.App.1977), fn. 18, wherein Simeone, C. J., noted:

"The corpus delicti can seldom be proved by direct and positive evidence. In proving the corpus delicti the reasonable rule has always been that only the best proof that is presently attainable need be shown. *State v. Simler*, 350 Mo. 646, 167 S.W.2d 376, 383 (Mo.1943); *State v. Henderson*, 186 Mo. 473, 85 S.W. 576, 578–579 (1905); *State v. Poor*, 286 Mo. 644, 228 S.W. 810, 815 (1921). The corpus delicti may be shown by circumstantial evidence. See cases collected in 30 Am. Jur.2d, Evidence § 1141, pp. 316–317 (1967); *State v. Smith*, 329 Mo. 272, 44 S.W.2d 45, 48 (Mo.1931) and cases cited therein—corpus delicti may be proved by circumstantial evidence. In Missouri, the corpus delicti has never been construed to require more than proof, direct or circumstantial, that a specific injury occurred and criminal agency of another. See *State v. Joy*, 315 Mo. 7, 285 S.W. 489, 494 (1926) (Blair, concurring); *State v. Hawkins*, 165 S.W.2d 644, 646 (Mo.1942)."

The medical evidence established that the victim's cause of death was a shotgun wound at the back of the head and that the gun had nearly been in contact with the victim's head when fired. It is unlikely that an individual could fire a 12-gauge shotgun into the back of his own head at point-blank range.

■ In *State v. Ross*, 371 S.W.2d 224 (Mo.1963), circumstantial evidence was held sufficient to establish criminal agency. In *Ross*, the victim was found to have died of a gunshot wound, after his car crashed through the window of a drug store. No gun was found on his person, in the car or in the vicinity. The court concluded that there was sufficient evidence of criminal agency. *Id.* at 226. In this case the victim also died of a gunshot wound and no gun was found in the vicinity. This evidence sufficiently established that the victim died as the result of criminal action by someone other than himself and did not commit suicide. Thus, the state did independently establish the corpus delicti of murder prior to the admission of defendant's videotaped confession.

Furthermore, ". . . '[i]f there is evidence of corroborating circumstances which tend to prove the corpus delicti and correspond with circumstances related in

the confession, *both* the *circumstances* and the *confession* may be considered in determining whether the corpus delicti is sufficiently proved.'" *State v. O'Neal,* 436 S.W.2d 241, 245 (Mo.1968) (Emphasis added.); *State v. Colton,* 529 S.W.2d 919, 922 (Mo.App.1975) (Emphasis added.) Several points in defendant's confession were corroborated by evidence introduced by the state; the victim was found in a vacant lot where defendant said the shooting had taken place, the victim died of a shotgun wound to the back of the head as the defendant had stated and a shotgun shell was found near the body. The police also received two tips from informants connecting defendant with the incident. The corpus delicti was established by the state's evidence when considered with defendant's corresponding confession.

Defendant's fourth point is that his confession was inadmissible because he was not adequately advised of his constitutional rights before making the videotaped confession. Defendant concedes that the *Miranda* warnings were read to him as required in *Miranda v. Ariz.,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The police initially questioned defendant as a possible witness and arranged to videotape the statement after learning defendant had enlisted in the Army. At some point in the videotaping session, defendant became a suspect. Defendant contends that although he was read his basic *Miranda* warnings as a witness, he was not apprised of his rights as a *suspect* and that this "sudden and drastic change" in his status required much more extensive questioning concerning his understanding of his rights. Specifically defendant argues that he should have been told that he was a suspect and would be questioned as such.

Defendant does raise an interesting question. We do not find it necessary to discuss this question, however, because the record establishes that defendant was adequately advised of his rights and was able to intelligently waive such rights. The record indicates that defendant was advised of his rights before questioning and again before the videotaping session. When defendant's story began to be incriminating during the taping, defendant was again informed of his rights, asked if he understood the meaning of the term "rights" and asked if he wanted to waive his constitutional rights and make a statement. Defendant answered in the affirmative and completed his statement. The record indicates defendant was repeatedly informed of his rights, both as a witness and as a suspect. Although defendant was not expressly told he was no longer a witness but a suspect, it is clear that defendant, whatever his status at a given time, did understand that any statement he made might be used against him in a court of law.

For the reasons discussed above, the judgment is affirmed.

STEWART and REINHARD, JJ., concur.