STATE of Missouri, Respondent,

v.

Randy GAMBLE, Appellant.

No. 12842.

Missouri Court of Appeals, Southern District, Division One.

April 6, 1983.

John D. Ashcroft, Atty. Gen., Janet E. Papageorge, Asst. Atty. Gen., Jefferson City, for respondent.

Stephen P. Seigel, P.C., Springfield, for appellant.

TITUS, Judge.

Having waived a jury trial, defendant was court-convicted of the class C felony of second degree burglary (§ 569.170 RSMo 1978) and sentenced to imprisonment for a term of three years. § 558.011–1(3) RSMo 1978. Defendant appealed.

A.D. Ragan and his son, Ronald, were living in a mobile trailer home on rural property. The night before the events herein occurred, someone broke into the mobile home and stole a Ruger New Blackhawk 357 pistol. On the night in question

A.D. and Ronald were in the trailer watching television when a neighbor's telephone call advised that an unlighted "vehicle was coming in our direction." The trailer's lights and television were extinguished. Presently A.D. and Ronald saw a vehicle stop in front of the mobile home. Its horn was sounded several times before departing. Soon thereafter the vehicle returned and drove past the trailer a short distance before stopping near a shop building on the property. When A.D. and Ronald heard someone forcing the door to the shop, they armed themselves, left the trailer, walked toward the shop and encountered the defendant and one Talbert. The latter was pushing Ronald's new motorcycle and was about 20 feet from the previously locked shop building where the motorcycle had been stored. Ronald told the two men to stop or he would shoot and they did. A.D. went to the trailer to summon official assistance and then returned to where Ronald was holding defendant and Talbert at gunpoint. During the long wait for official help, A.D. testified the defendant remarked he and Talbert thought Ronald was in jail and they would steal the motorcycle so that Ronald could collect on the insurance. Ronald told defendant and Talbert he had never had a conversation with them concerning the motorcycle and they had no business breaking into the shop building and taking it.

After a lengthy wait for the arrival of summoned help, either defendant or Talbert announced that "If you aren't going to kill us we're leaving" and they started to depart. However, defendant and Talbert drew handguns and one or the other or both opened fire. A.D. and Ronald returned the fire but no one on either side was hit. Defendant and Talbert reached the vehicle in which they arrived and departed.

En route to the Ragan farm, two deputy sheriffs encountered defendant and Talbert in defendant's van. The patrol car was driven onto the middle of the road and stopped so the van could not pass. Defendant and Talbert were placed in the patrol car, given their *Miranda* warnings and driven to the Ragan farm. En route defendant

told the deputies that Ronald had hired them to take the motorcycle so he could collect on the insurance. Also, that the keys were supposed to have been left in the motorcycle but weren't and this is why they were forced to push it.

After arriving at the Ragan farm the deputies told A.D. and Ronald what defendant had told them. Ronald responded to this by reaching in his pocket and extracting "some keys." En route to the county jail, the defendant wanted to get the keys from his van and lock it because he had a gun inside that he did not want stolen. When the deputies reached the van two guns were removed therefrom. One was a Raven Arms 25 caliber automatic; the other was a Ruger New Blackhawk 357 pistol. Both had been fired.

Testifying as the sole witness for the defense, defendant stated that at some unspecified time at Ronald's residence when Ronald, defendant, Talbert and several others were together, Ronald announced "he would give them a hundred dollar bill if they would make it look like [the motorcycle] was stolen, and then he would come and pick it up the next day" so that he could "collect on his insurance or something like that." According to defendant, Ronald said he needed to collect the insurance money because he owned his "dope dealer" about $5,000. The court elicited from defendant that when the motorcycle was taken from the locked shop building "Ronald was mad at me because he thought I had turned him in on stealing ... cattle." But even though Ronald was mad at him he was going to "do him this favor and steal his motorcycle" because "he had already paid us some money and [Talbert] wanted to go ahead and do it."

Defendant's first point relied on here is that the trial court erred in refusing his counsel's request to exclude the witnesses from the courtroom after A.D. Ragan had testified. We note that the state called only three witnesses, in the following order, (1) A.D. Ragan, (2) Deputy Sheriff Weeks and (3) Deputy Sheriff Scobee. Defend-

ant's trial counsel, different from counsel on appeal, did not cross-examine either deputy sheriff.

■ The only two cases cited by defendant to the first point relied on, i.e., *Brown v. State,* 485 S.W.2d 424 (Mo.1972) and *State v. Tschirner,* 504 S.W.2d 302 (Mo.App. 1973), are not apropos of the situation in this case nor authority for defendant's urgings. This court is not obliged to review points or the argument made thereto when they appear without citation of applicable authority. *State v. Ritterbach,* 627 S.W.2d 894, 897 (Mo.App.1982). Defendant seemingly, but not clearly, argues that if the two deputies were permitted to hear one another testify they would change their testimony to coincide with that of the other. However, this would have been possible only as affects the testimony of the second testifying deputy because the first would not have heard what the second said before he testified. Contrary to the just mentioned argument, defendant tries most unconvincingly to demonstrate inconsistencies in the testimony of the two deputies. We perceive none and assume that astute trial counsel likewise did not by reason of his lack of cross-examination.

■ The decision as to whether witnesses should be excluded vel non from the courtroom is discretionary with the trial court and will not be countermanded on appeal unless that discretion is clearly abused. *State v. Hanson,* 587 S.W.2d 895, 905[29] (Mo.App.1979). We rule that the court nisi did not abuse its discretion by refusing the request for the rule on witnesses where the only two known witnesses appearing after the rule was requested were deputy sheriffs and there is nothing in the record to indicate that either had a special interest in the case or that either did anything differently than he believed he was bound to do as a conservator of the peace. *State v. Neal,* 476 S.W.2d 547, 549[1] (Mo. banc 1972). Defendant's first point is denied.

■ In toto, defendant's second and final point relied on reads: "The conviction of appellant should be reversed for the reason that the trial court's finding that defendant was guilty was not supported by substantial evidence since the testimony of the state's witnesses supported defendant's defense and testimony." The apt reader will be quick to note that the point is penned in utter disregard of the mandatory requirements of Rule 30.06(d), V.A.M.R. The point, as written, does not attempt to state "wherein and why" the unspecified "testimony of the state's witnesses supported defendant's defense and testimony." It also does not undertake to enlighten us as to what defendant's defense was or how it was supported by the state's witnesses. This court is not obligated to seek through the argument portion of defendant's brief or the transcript on appeal to come by an understanding of points relied on penned in a conclusory and abstract fashion. Points penned contrary to the mandatory requirements of Rule 30.06(d), V.A.M.R., and which cannot be understood without resorting to the transcript or the argument section of the brief, preserve nothing for appellate review. *State v. Holt,* 603 S.W.2d 698, 701[1–2] (Mo.App.1980). However, as this tribunal did not give defendant a second opportunity to do what he should have done in the first instance (Rule 30.09, V.A.M.R.), we will briefly discuss what we assume the point to mean by referring to the transcript and the argument part of the brief.

The substance of defendant's argument to his second point, which covers less than one-half a page in his brief, is that A.D. heard defendant and Talbert having a discussion that they intended doing Ronald a favor by taking the motorcycle so that Ronald could collect for its loss from the insurance company. From this alone defendant concludes "that the trial court's decision that appellant was guilty could only have been based on evidence which was neither substantial, nor sufficient, and that his conviction should be reversed." We express our inability to understand the argument any better than the point.

■ While it is true that A.D. and the deputies recounted what reason defendant and Talbert had advanced as to why they had broken into the shop building and re-

moved the motorcycle, such recitations do not prove the truth of defendant's and Talbert's assertions or serve to corroborate the truth thereof. The credibility of witnesses is for the trial court to determine [*State v. Hankins,* 599 S.W.2d 950, 953[1] (Mo.App. 1980)] and in determining if the charge against defendant was proved, we must view the evidence and the proper inferences flowing therefrom in the light most favorable to the state. *State v. Buffington,* 588 S.W.2d 512, 514[1] (Mo.App.1979). Likewise, the trier of the facts, be it court or jury, has leave to believe or disbelieve all, part or none of the testimony of any witness, or to accept it in part just as the court or jury may find the same to be true or false when considered in relation to the testimony and circumstances of the case. *State v. Lieberknecht,* 608 S.W.2d 93, 98[3] (Mo.App.1980). Predicated upon these principles, we cannot agree with defendant's assertions and deny the second point relied on.

Judgment affirmed.

FLANIGAN, P.J., GREENE, C.J., and CROW, J., concur.