**STATE of Missouri, Plaintiff–Respondent,**

v.

**Donna ATCHISON, Defendant–Appellant.**

**No. 21052.**

Missouri Court of Appeals,
Southern District,
Division One.

July 22, 1997.

Motion for Rehearing or Transfer
Denied Aug. 13, 1997.

Application to Transfer Denied
Sept. 30, 1997.

Jeremiah W. (Jay) Nixon, Atty. Gen., Fernando Bermudez, Asst. Atty. Gen., Jefferson City, for Plaintiff–Respondent.

GARRISON, Judge.

Donna Atchison (Defendant) was charged, in a five count indictment, with the Class C felony of stealing a total of $4,141.96 (§ 570.030),[1] from the City of Ava, Missouri (the City), where she was employed as the billing clerk in charge of the monthly utility bills issued to customers. She was convicted by a jury on all five counts, and on this appeal contends that the trial court erred in admitting evidence which had not been disclosed in discovery, in admitting evidence which was not properly qualified as business records, and in overruling her motion for a judgment of acquittal. We affirm.

The offenses were alleged to have occurred on December 2, 5, 12, 13 and 15, 1994, and involved funds received by the City in payment of customer's utility bills. The utility bills sent to customers included a perforated stub (the "hard copy"), which they returned to the City when paying the bill. When the payment and the "hard copy" were received, the transaction was recorded on a cash register by employees using their individual identity codes. The cash register produced a receipt as well as an internal tape which documented each transaction. Each afternoon, an employee would match the hard copies paid since the prior afternoon with the City's copy of the bills ("soft copies"), total the bills paid, count the cash and checks in the cash register, and retrieve the internal cash register tape which would include a total of the utility bill payments received ("z-tape"). The cash register tape was checked against the hard copies to be certain that each transaction was correctly documented on the tape. If all of these totals were the same, each individual utility transaction was fed into a computer by an employee using that person's individual computer code. After being checked for accuracy, that information was stored in the computer by the employee, thereby giving the customers credit for their payment. The transactions fed into the computer on each such occasion were

James M. Kelly, Republic, for Defendant–Appellant.

---

1. All statutory inferences are to RSMo 1994 unless otherwise indicated.

collectively called a "batch." A print-out of the batch was then produced and included in the City's records.

At trial, the State's theory was that Defendant had stolen the money by entering "voids" on the cash register, using the cash register codes assigned to her as well as other employees. There was evidence that those codes were available to other employees in the office. The "voids" equaled the total amount of money removed on each occasion. A batch would then be created in the computer in the amount of the money being taken to be certain that the customers received credit and did not continue to be billed. Those batches were entered under Defendant's computer code as well as those of other employees. There was evidence, however, that Defendant was the only one of those employees who knew or had access to their individual computer identification codes. To complete the process, the City contended that the hard and soft copies of the bills were then removed and disposed of.

In Defendant's first point relied on, she contends that the trial court erred, to her prejudice, in admitting exhibits which had not been previously disclosed to her in response to her discovery request. Prior to trial, Defendant served the State with a request to produce documents pursuant to Rule 25.03. Included was a request for "[a]ny books, papers, documents, ... which the State intends to introduce into evidence at the ... trial ..." The prosecutor responded by notifying Defendant's attorney that the requested documents could be inspected and copied at his office on a certain date. A representative from Defendant's attorney's office appeared on the appointed day to find a box full of documents which were copied.

Without going into an inordinate amount of detail, it is accurate to say that the State's evidence included a large number of detailed and complex documents. Our review of this case is complicated by the detailed nature of the evidence and the lack of clarity in the record, including the fact that the identity of the exhibits being discussed or objected to is unclear in some instances. Many of the exhibits consisted of computer printouts, cash register tapes, utility bills and receipts. Defendant's attorney was accurate in arguing that the evidence was complex and difficult to assimilate and understand. Likewise, the prosecutor was accurate in saying that the evidence was "very complicated," and that twenty-four hours per day for two weeks would not be sufficient to permit a review of all of it.

On the first day of trial, Defendant's attorney notified the trial court that a computer programmer, called by the State, appeared to be testifying about "batches" containing Defendant's code about which they had no advance notice. Defendant, however, made no objection to the documents when they were offered in evidence and preserved nothing for appellate review concerning them.

At approximately 2:00 P.M. on the second day of trial, the State called the City Clerk who identified the City's attendance records for employees working at city hall during the year 1994, consisting of a folder with over eighty-five pages in it. Defendant objected that these records had not been disclosed prior to trial, a fact tacitly conceded by the prosecutor during argument on the matter, and requested that the evidence be excluded. The State argued that it intended to use these exhibits in connection with others to demonstrate that thefts other than those with which Defendant was charged had occurred in 1994, and that Defendant was the only one of several employees who was at work each and every time a theft occurred. It argued, and the trial court preliminarily agreed, that they were relevant, even though they demonstrated offenses not charged, to show a common plan, scheme or design. The trial court also acknowledged that the case was complicated, that the evidence in question was "pretty important," and that it should have been disclosed to Defendant. When the trial court indicated it did not think it was necessary to exclude the evidence, Defendant asked that either the evidence be limited to the days referred to in the indictment, or they be permitted to review the exhibits and then announce what relief they believed was necessary.

The trial court, with agreement from the State, offered to recess the trial until 9:00 A.M. the following day to permit Defendant's

attorney to review the documents and prepare his cross-examination. It also indicated it would order the State to keep its witnesses at the courthouse and make them available for depositions that evening at the State's expense, if Defendant desired, using the official court reporter. The prosecutor then revealed that he had just learned that although he thought he had all of the records for 1994 at the courthouse, he apparently only had those for December, 1994, and had requested that someone bring those for the other eleven months from Ava to Hartville where the case was being tried. Defendant's attorney, however, indicated that the trial court's suggested solution was insufficient, that a recess until 9:00 A.M. the next morning would not permit him to digest the records and prepare to meet them, and candidly told the court that if it was not going to grant the other sanctions requested, they might as well proceed with the trial.

The trial resumed when the prosecutor received the rest of the attendance records which were identified and offered in evidence by the State. Defendant renewed its previous objection to the documents and also argued that an insufficient foundation had been laid for their admission. The trial court overruled the objections, but said that it would wait to rule on their admissibility until a later witness established their relevancy. It is unclear from the record whether this exhibit was ever actually admitted in evidence. In any event, although Defendant complains about this exhibit in her brief, no issue about the failure to disclose it prior to trial was raised in Defendant's motion for new trial.

The following day, the State called Duane Hudson, a C.P.A., who had reviewed the City's documents and produced summaries demonstrating the alleged theft of money from the City during 1994. Included were seventy-one different occasions of alleged theft, in addition to those which allegedly occurred in December, 1994, with which Defendant was charged. Again, Defendant objected that the documents upon which the summaries were based had not been disclosed prior to trial. The ensuing discussion between the trial court and counsel consumes a total of seventy-six pages of the transcript, and includes discussions about which documents had actually been disclosed to Defendant prior to trial. As we understand the record, the parties agreed that fourteen of the exhibits under discussion at that time had not been disclosed. The discussions also revealed that most, if not all, of the supporting documentation for the summaries about which Hudson was preparing to testify had not been disclosed. As we understand the record, the summaries were designed to show that money was taken from the City on seventy-one occasions in 1994, in addition to the ones for which Defendant was charged, and that she was the only employee who was at work on each of those days. The State argued that this information was admissible on the theory that it showed a common plan, scheme, or design.

Defendant contended that the State had not only failed to reveal the supporting documentation concerning the non-charged offenses, it had also failed to disclose the documents supporting Mr. Hudson's summaries concerning the offenses with which she was charged. The trial court excluded the documentation on the non-charged offenses, holding that it was so extensive that it was unreasonable to expect Defendant to be able to prepare to meet it in the middle of trial. It concluded, however, that it was not going to exclude the documentation supporting Mr. Hudson's conclusions concerning the dates for which Defendant was charged, and recessed the trial on the third day until the next morning, telling Defendant's attorney that he could have whatever time was necessary to review the supporting documentation concerning the charged offenses. When a summary concerning one of the dates for which Defendant was charged was offered in evidence, however, her attorney told the trial court, "[o]ther than the objections I've made before about failure to establish proper foundation for business records, I have no further objections."

■ The decision about whether to impose a sanction for failure to make required disclosures, and if so the nature thereof, is a matter within the discretion of the trial court. *State v. Enke,* 891 S.W.2d 134, 138 (Mo.App.

S.D.1994). Under Rule 25.16, the trial court may order disclosure, grant a continuance, exclude the evidence, or enter such other orders as it deems just under the circumstances. *Id.* "The trial court is to tailor the remedy to alleviate harm to the defense from failure to disclose." *Id.* "[T]he decisive question is whether the failure to disclose resulted in fundamental unfairness or prejudice to the defendant." *Id.* A conviction will not be reversed because of the improper admission of an exhibit unless the defendant demonstrates prejudice. *State v. Womack*, 920 S.W.2d 194, 196 (Mo.App. E.D.1996). A defendant has the burden of showing both the error and resulting prejudice before a reversal will be granted. *Id.*

■ In the instant case the State does not dispute that the prosecutor failed to produce a large number of documents which were within the scope of Defendant's request. The State does dispute, however, that Defendant was prejudiced and is entitled to a reversal of her conviction. Not only does it contend that Defendant was not prejudiced, it also argues that she obtained the relief she requested.

It is important that we note that not all of the exhibits which the State sought to use were, in fact, introduced. For instance, it attempted to introduce evidence of seventy-one other instances where money was missing, in addition to those charged, on the theory that it demonstrated a common plan, scheme or design. The documentation supporting that evidence was apparently the most voluminous, and was excluded by the trial court as a sanction for the failure to disclose it. This was in response to Defendant's request that the evidence either be excluded or that it be limited to the documentary evidence concerning the dates of the offenses with which she was charged. Accordingly, Defendant received the relief which she requested. Having done so, she cannot claim error on appeal. *State v. Olivares*, 868 S.W.2d 122, 130 (Mo.App. W.D. 1993). Under those circumstances, nothing is preserved for our review. *State v. Pratt*, 858 S.W.2d 291, 292 (Mo.App. E.D.1993).

Defendant also complains that the documentation supporting the five counts with which she was charged and convicted was not disclosed prior to trial. This allegation is also not contested by the State. Defendant's counsel did make the trial court aware that his objections to the materials included the fact that they had not been disclosed prior to trial. The trial court did not exclude the material, but told Defendant's counsel that it would give him as much time as he needed to review it. It then recessed the trial until 9:00 A.M. the next morning.[2] When the trial resumed, Defendant made no objection to the summaries prepared by Mr. Hudson concerning the five dates in December, with which she was charged, and the materials on which they were based.

Defendant's counsel was permitted to voir dire the witness (Mr. Hudson) in the presence of the jury concerning the documentation supporting the summary which he prepared demonstrating the offense on December 2, 1994. During that questioning, he asked Mr. Hudson questions concerning part of the exhibits which he contends had not been previously disclosed. The trial court then asked Defendant's attorney if he had any objection to the exhibit (the summary) and was told that "other than the objections I have made before about failure to establish proper foundation for business records, I have no further objections."

Defendant's counsel then proceeded to interrogate Mr. Hudson about the summary of transactions for December 5, 1994, and the supporting documentation (which had also not previously been disclosed). In response to an inquiry from the trial court about the purpose of his voir dire questioning, Defendant's counsel said that his purpose was to be sure that they had all of the supporting documentation for the summaries prepared by the witness for the five dates covered by the charges. He then suggested that all of the summaries prepared by Mr. Hudson be passed to the jury, saying, "[l]et me withdraw what objection I may have right now if [the prosecutor] wants to pass these out to

---

**2.** The time of day when the trial was recessed    does not appear in the record.

the jurors so they can make notes on them, . . ."

■ The prosecutor then questioned Mr. Hudson about his summary for each of the five days charged, including questions about the supporting documentation which Defendant alleges had not been disclosed. Defendant made no objection during this interrogation. When the State's exhibits (except the attendance records, the summaries for other days in 1994, and the comparison between those summaries and the attendance records) were offered in evidence, the following occurred:

[Defendant's counsel]: Judge, I would have to go over all these and make sure none of them make reference to something other than what we're talking about and I've already made the objection that I object to all of these because no proper foundation for business records but if we can have the understanding that I'm not waiving any right to object.

Court: You made the objection and I understand it's continuing, that all these exhibits are based on records that have been improperly admitted for lack of foundation. I understand that you've made a record. Do you have any other objection to any of these exhibits?

[Defendant's counsel]: The only other objection I have, I can't tell you what it is, if any of them apply to transactions other than the ones for December. If they —

[Prosecutor]: Exhibit 27, 28 and 29 which I excluded, are the summary, the attendance records and the comparison sheets between —

[Defendant's counsel]: I understand.

Court: Those summaries that the jury's been furnished with, any objection?

[Defendant's counsel]: No.

We note that the exhibits offered in evidence when this exchange occurred included not only the summaries, but also the supporting documentation which Defendant claims was not disclosed. The comment of the trial court, however, gives some indication that what was actually being discussed was the summaries. At the close of the State's case, however, the trial court inquired "[a]nything

further?" The prosecutor said "[j]ust the exhibits." The following then occurred:

Court: Did you have a chance to look over the exhibits?

[Defendant's counsel]: No, I haven't.

Court: Specific objections?

[Defendant's counsel]: I have no specific objections, Your Honor —

Court: Okay.

[Defendant's counsel]:—other than—

Court: Other than the one you made, right, all those exhibits you requested be admitted will be admitted.

While it is not completely clear, we interpret the comments of Defendant's counsel to indicate that he was continuing his objection that the foundation for introduction of the exhibits was insufficient, but that he made no objection based on the fact that some of the documentation included in the exhibits had not been produced prior to trial.

"The established rule in Missouri holds that stating 'no objection' when evidence is introduced constitutes an affirmative waiver of appellate review of the issue." *State v. Zelinger*, 873 S.W.2d 656, 660 (Mo.App. S.D. 1994) (quoting *State v. Daly*, 798 S.W.2d 725, 729 (Mo.App. W.D.1990)). Consequently, we hold that Defendant is entitled to no relief pursuant to her first point, and it is, therefore, denied.

In her second point relied on, Defendant contends that the exhibits introduced by the State were hearsay and not properly qualified as business records. In support, she argues that there was no evidence about the mode or time of their preparation.

■ Pursuant to § 490.680 a record is competent evidence if relevant and if the custodian or other qualified witness testifies to its identity and mode of preparation, that it was made in the regular course of business at or near the time of the act, condition or event and, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission. "The trial court has wide discretion in determining whether the statutory requirements for admission have been met." *State v. Stephens*, 556 S.W.2d 722, 724 (Mo.App.

E.D.1977). The courts, however, have been relatively liberal in interpreting the requirements for the qualification of business records. *Id.* An appellate court will find an abuse of discretion only when the trial court's ruling on admissibility of evidence clearly offends the logic of the circumstances or when it becomes arbitrary and unreasonable. *State v. Blakeburn*, 859 S.W.2d 170, 177 (Mo. App. W.D.1993).

A review of the record indicates that there was considerable testimony about the procedures followed by the City in connection with utility bills, payments, and the timing and procedures followed in creating the cash register tapes, and the insertion of that information in the computers. The supervisor for the City's utility billing department identified most of the records in question and testified that they were generated and kept in the regular course of the City's business.

It is not necessary that there be evidence specifically showing that each individual page of the records complied with the statutory requirements. Rather, it may be sufficient to establish the procedures followed in preparing records of the type sought to be admitted. *See State v. Stephens*, 556 S.W.2d at 724–25; *State v. Jones*, 518 S.W.2d 322, 325 (Mo.App. E.D.1975). Here, the evidence was amply sufficient to identify and qualify most of the records under that standard.

■■■ Defendant points out, however, that not all of the exhibits in question were identified or qualified as business records. Our review of the record indicates that this contention may be valid as to three exhibits. The failure to comply with the provisions for admission of business records is not relevant, however, when the admission of the document has not prejudiced the defendant. *State v. Stephens*, 556 S.W.2d at 725. Here, Defendant does not demonstrate how any of these exhibits were prejudicial to her. Point two is denied.

■■■ In her final point on this appeal, Defendant contends that the trial court erred in overruling her motion for judgment of acquittal filed at the close of all of the evidence and again in conjunction with her motion for new trial. She argues that the evidence was insufficient to permit a reasonable juror to find beyond a reasonable doubt that she took money belonging to the City.

In reviewing the sufficiency of the evidence, the appellate court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo.banc 1989). Our review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.* Based on this standard of review, there was sufficient evidence in the instant case to support the conviction.

There was evidence from which the jury could have found that the codes used by the employees in entering transactions in the cash register were known or available to the other employees, but that Defendant was the only one of the employees who entered information into the computer batches and had access to the other employee's computer codes. The evidence indicated that the voids entered on the cash register tape under the codes of other employees matched the batch entries made later in the computer under Defendant's code. There was also evidence that, contrary to usual practice, more than one batch entry was sometimes made under Defendant's code on the days for which she was charged, matching the voids entered on the cash register. Other evidence indicated that one of the voids entered on the cash register under another employee's name was entered when only Defendant was present, and that missing copies of utility bills and portions of cash register tapes were found in Defendant's waste can. Under these circumstances, and the applicable standard of review, we conclude that there was sufficient evidence from which the jury could have found Defendant guilty beyond a reasonable doubt. Point three is denied.

The judgment is affirmed.

BARNEY, P.J., and PREWITT, J., concur.