STATE of Missouri,
Plaintiff–Respondent,

v.

Laura FITZGERALD,
Defendant–Appellant.

No. 55583.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 15, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 13, 1989.

Application to Transfer Denied
Nov. 14, 1989.

ORDER

Henry B. Robertson, Karen Elizabeth Kraft, Asst. Public Defenders, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., and John P. Pollard, Jefferson City, for plaintif-respondent.

STEPHAN, Judge.

Appellant Laura Fitzgerald was convicted of one count of child abuse and one count of second degree assault. The trial court sentenced her to one year on each count, to run concurrently, and to fines totalling $100.

In late June 1987, Myrtle Purnell and Eileen Immken, two workers at the Kingdom House Day Care Center in St. Louis, noticed cuts on the hand, wrist, and arm of appellant's daughter, Keni, who was eleven months old at the time. Appellant claimed to have no knowledge of how the injuries occurred, and stated that demons or spirits must have caused them. The lacerations became infected and had to be treated at a hospital. A few days later, Ms. Purnell and Ms. Immken noticed a burn on Keni's arm. Appellant stated that Keni had pulled a curling iron down on herself. She later changed this story when questioned by the police. Appellant told Detective Guinn that her other daughter, Lacy, had turned on the curling iron while appellant was preparing to go out. Keni then got the curling iron and burned herself.

Approximately a month after the curling iron incident, appellant informed the day care center that Keni would be absent for a few days because she had broken her arm. She told Ms. Purnell and Ms. Immken that she had pulled Keni by the arm and, in doing so, broke it. Appellant told Detective Guinn that Keni had been jumping up and down on the couch and started to fall. Appellant grabbed Keni by the arm to stop the fall and broke it. She later recanted this version of her story and told Detective Guinn that Keni was not about to fall, but that appellant had gotten angry and had grabbed Keni by the arm.

Appellant was charged with one count of assault in the first degree for breaking Keni's arm and one count of child abuse for cutting and burning Keni. In addition to Ms. Purnell, Ms. Immken and Detective Guinn, the state called Drs. Powell and Monteleon. Dr. Powell, the treating physician, testified that the break was a "spiral fracture" which is a "violent, twisting type" injury. Extreme force is needed to create such an injury and the simple tugging or lifting of Keni by one arm would not create sufficient force to cause this type of injury. He concluded by stating the fracture was "very highly suspicious for child abuse."

Dr. Monteleon testified that the injury to Keni's wrist was caused by a cord or something else with binding effect, wrapped around her wrist. He did not believe that the burn on Keni's arm was an accident because of the location of the wound. Dr. Monteleon also stated that because of the number of injuries, their severity, the age of the child and the short periods of time between all the injuries, it was unlikely that the injuries were the result of accidents. Dr. Monteleon's testimony regarding the broken arm was that it was the result of a powerful snap and twist as opposed to a lifting motion. Based on the nature of the injury, the force required to cause it, and the age of the child, Dr. Monteleon concluded that the injury was the result of child abuse.

Appellant took the stand. She had no explanation as to how Keni's wrist and hands were cut and denied ever saying they were caused by demons. She changed her story on how the burn occurred. She also stated that the curling iron fell off the bathroom sink and onto Keni and that no one other than she and Keni were in the bathroom when this occurred. She admitted pulling Keni off the couch because she was aggravated with her.

In her first point, appellant argues that the trial court erred in overruling her motion for judgment of acquittal on the charge of child abuse because there was insufficient evidence presented that appellant knowingly inflicted cruel and inhuman punishment upon the child.

■ The state presented both direct and circumstantial evidence of child abuse. Circumstantial evidence is evidence which does not directly prove a fact in issue, but gives rise to a logical inference that the fact exists. *State v. Newbold*, 731 S.W.2d 373, 380 (Mo.App.1987). Direct evidence is evidence which proves the existence of a fact in issue without other inference of that fact. *Id.* Admissions of a criminal defendant are direct evidence of guilt. *Id.* The test to determine the sufficiency of the evidence is whether all the evidence, circumstantial and direct, which supports the jury determination of guilt together with all favorable inferences taken as true, and the adverse inferences discounted, the elements of the offense have been proven by substantial evidence. *Id.* at 381.

■ Appellant's statements that demons caused the cuts on Keni's wrist and that she was present when Keni suffered the injuries were admissions. Untrue denials can constitute admissions as well as manifesting a consciousness of guilt. *State v. Leach*, 752 S.W.2d 395, 396 (Mo. App.1988). A permissible inference of guilt may be drawn from acts or conduct of an accused subsequent to an offense if they tend to show a consciousness of guilt by reason of a desire to conceal the offense or role therein. *Id.*

Both doctors testified that Keni's injuries were not accidental in nature. Extreme force was necessary for the arm to be broken in the way Keni's was. Dr. Monteleon stated that the location of the burn on Keni's arm precluded the explanation that it was accidental and that the cut was probably caused by some sort of binding device. Given the number of injuries, appellant's inconsistent versions of how the injuries occurred, appellant's admissions, and the doctors' testimony; it was not unreasonable for the jury to conclude that appellant was guilty of knowingly inflicting cruel and inhuman punishment on her child. Point I is denied.

In her second point appellant argues that the trial court erred in overruling her mo-

tion for acquittal on the second degree assault charge because the evidence was insufficient to sustain the conviction. She argues there was no proof that appellant acted recklessly in breaking Keni's arm, and claims that there was insufficient evidence of protracted impairment of Keni's arm to establish serious physical injury as required by statute.

 Appellant was convicted of assault in the second degree by recklessly causing serious physical injury to Keni Fitzgerald by breaking her arm. § 565.060.1(3), RSMo 1986. Under § 562.016.4 RSMo 1986, "A person 'acts recklessly' or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." "Serious physical injury" is defined in part as "physical injury ... that causes ... protracted loss or impairment of the function of any part of the body." § 565.002(6), RSMo 1986. "Physical injury" is defined as "physical pain, illness, or any impairment of physical condition." § 556.061(20), RSMo 1986.

Appellant testified that she was aggravated and agitated when she pulled Keni off the couch by her arm; that she heard a snap and Keni's arm went limp; and that she "must have" twisted Keni's arm when she picked Keni up. Dr. Powell testified that the fracture was of a "violent twisting type injury"; and that "extreme force" and a "twisting motion" were necessary to create such a fracture. Dr. Monteleon testified that a powerful snap and twist were required to cause Keni's fracture.

When an adult, who is admittedly aggravated and agitated, grabs a year old baby by the arm and twists with enough force to cause a spiral fracture, that adult has "acted recklessly." These actions constitute a gross deviation from the standard of care which a reasonable person would exercise in the situation. There was ample evidence from which the jury could find appellant acted recklessly. *See, State v. King,* 723 S.W.2d 442, 443 (Mo.App.1986).

 Appellant's claim that there was insufficient evidence of protracted impairment of Keni's arm to establish serious physical injury is erroneous. "Protracted" means something short of permanent, but more than of short duration. *State v. Simmons,* 751 S.W.2d 85, 90 (Mo.App.1988). What is considered "protracted" depends on the circumstances. *Id.* Keni was hospitalized for three days and wore a plaster splint for four weeks. While there is no set formula regarding what amount of time constitutes "protracted," we find that four weeks in the life of an infant is enough to constitute "less than permanent but more than of short duration." *See, State v. Briggs,* 740 S.W.2d 399, 401 (Mo.App.1987); *State v. Mentola,* 691 S.W.2d 420, 422 (Mo.App.1985). Point II is denied.

The judgment of the trial court is affirmed.

SMITH, P.J., and SATZ, J., concur.