**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Ronald WOLFE, Defendant–Appellant.**

**No. 56735.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 29, 1990.

Motion for Rehearing and/or
Transfer to Supreme Court
Denied Aug. 7, 1990.

Charles Clifford Schwartz, Jr., Charles M. Shaw, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Frank A. Jung, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Presiding Judge.

Defendant, Ronald Wolfe, was convicted by a jury of driving while intoxicated, § 577.010 RSMo 1986 and possession of marijuana, § 195.020 RSMo 1986.[1] Defendant appeals. We affirm.

Defendant does not question the sufficiency of the evidence. On January 22, 1988, Officer Loyd Gaddie saw defendant drive through a stop sign without stopping. Officer Gaddie followed defendant and "pulled him" over. He noticed defendant's eyes were bloodshot and watery and defendant's speech was slurred. He also smelled the odor of an "alcoholic beverage" on defendant's breath. Officer Gaddie administered three field sobriety tests, and, when defendant failed all three, Officer Gaddie arrested him.

Lieutenant Barry Knipfel joined Officer Gaddie as Gaddie conducted the field sobriety tests. Lieutenant Knipfel, using his flashlight, looked into defendant's car. He saw an opened bottle of beer lying against the console on the passenger's side of the car and a hand rolled cigarette lying on the floorboard of the driver's side.

After Officer Gaddie arrested defendant and read him his Miranda rights, he searched defendant's car while Lieutenant Knipfel watched defendant. Defendant reached under his coat and removed something from beneath it. Lieutenant Knipfel grabbed defendant, placed him against defendant's car, took the item from defendant and then handcuffed him. The item was a bag containing marijuana and a small piece

---

**1.** This statute has been repealed. Defendant was found not guilty of possession of LSD.

of paper containing lysergic acid diethylamide.

Defendant was then taken to the police station where he took a breath alcohol test. Then defendant was taken to a hospital where he was given a blood alcohol test. The breath test showed defendant had a blood alcohol level of .136%, and the blood test showed a level of .18%.

At trial, defendant's defense against the possession charge was that the bag containing the marijuana was found in the jacket he was wearing but the jacket belonged to a James Blades. Mr. Blades died before trial.

On appeal, defendant raises Nine Points and additional Sub–Points as error. We address the issues raised in those Points as defendant has defined them. None has merit.

I

Defendant makes three different challenges to the trial court's rulings on a statement he made to the police. None is persuasive.

■ Defendant's first two challenges focus on the part of his statement in the following question and answer:

Q. What about the marijuana in the bag that you pulled from the back of your pants?

A. I found it in my jacket and didn't know what it was. I don't normally wear this jacket [and] I think someone else put it in there. I was afraid of officers finding what might be in there.

During the state's case in chief, defendant argues, the state was allowed to read into evidence the question but only part of the answer. Defendant contends the part of his answer that which was admitted was:

A. I found it in my jacket.

He argues that his entire answer should have been admitted because "[t]he explanation made by the Defendant is reasonably related to an explanatory (sic) of the question of ownership of the jacket." On this issue, defendant's argument is misdirected and, thus, misses the mark.

Defendant argues the excluded portion of his statement should have been admitted under the entire conversation exception to the hearsay rule. *See State v. Stevens,* 757 S.W.2d 229, 234 (Mo.App.1988). To come within this exception, the excluded portion of the statement must tend to explain, contradict, or qualify the portion of the statement already admitted. *Id.* The portion of the statement admitted into evidence was offered as an admission by defendant that the jacket was his. Defendant argues the excluded portion tends to explain and qualify the portion admitted. We disagree.

The only portion of the excluded part of defendant's statement that can even remotely be thought to relate to the issue of ownership of the jacket is the language "I don't normally wear this jacket." Even this portion, however, does not speak to the issue of ownership of the jacket. Whether and how often defendant wears the jacket is of no relevance to the question of who owns it.

■ Defendant also argues the admission into evidence of the part of his statement admitting the jacket was his was evidence of a prior inconsistent statement which allowed him to introduce a prior consistent statement. As defendant argues in his brief: "[t]here was then a question before the jury of a statement inconsistent with the [d]efendant's innocence." Defendant also argues the trial court "prevented [him] from testifying [about] his own prior statement made to the police consistent with his innocence." This argument is also misdirected and, thus, misses the mark.

■ The terms "prior inconsistent statement" and "prior consistent statement" are terms of art. A "prior inconsistent statement" is a prior statement inconsistent with trial testimony. *State v. Wilkerson,* 638 S.W.2d 308, 311 (Mo.App.1982). The inconsistency exists between the prior statement and the testimony, not between the prior statement and defendant's innocence. Here, defendant's prior statement was not offered to rebut his testimony, but as substantive evidence during the state's

case in chief. It was offered as an admission by defendant and, as such, was evidence of his guilt. *State v. Fitzgerald,* 778 S.W.2d 689, 691 (Mo.App.1989). Because it was offered before defendant testified, the prior statement could not have been inconsistent with defendant's testimony.

■ Even if we were to hold defendant may introduce a prior consistent statement, defendant's point would still fail. To be admissible to rebut a prior inconsistent statement, the proffered prior statement must be relevant to the issue on which the witness was impeached. *State v. Renner,* 675 S.W.2d 463, 466 (Mo.App.1984). As we stated, defendant's statement that he doesn't usually wear the jacket is not relevant to the issue of who owns it. Therefore, defendant's testimony about his prior statement was properly excluded.

Defendant next challenges the exclusion of his entire statement. This challenge is neither clear nor explicit. If not grounded on the exclusion itself, the challenge, as we understand it, is related to the exclusion and the content of the statement. We have set out the entire written statement in the Appendix.

As we understand this challenge, defendant complains he was prevented from testifying about the statement at trial and he was also prevented from cross-examining Officer Gaddie about the contents of the statement. This dual prevention, defendant contends, prevented him from showing and arguing that someone other than defendant committed the crimes he was charged with.

■ As can be seen in the statement, the only reference to someone else who might have committed the crimes is speculative: "I think someone else put [the marijuana] in [my jacket].... I didn't know [the papers containing LSD] were [in my pocket].... I have no idea [who the marijuana and papers belong to]." However, evidence that some person other than defendant had an opportunity or motive to commit the crime charged is inadmissible without proof that the other person did some act directly connecting him with the commission of the crime. *State v. Easley,* 662

S.W.2d 248, 251–52 (Mo. banc 1983). Defendant has shown no such evidence.

Additionally, we note defendant was allowed to suggest another person may have committed the crime. During his direct testimony, defendant testified the jacket he was wearing belonged to Mr. Blades.

## II

■ Defendant argues the trial court improperly limited his voir dire by refusing to allow him to ask certain questions about Mr. Blades. During voir dire, defense counsel asked:

Jurors, do any of you know or did anyone of you know a Jim Blades? May I assume by your silence you didn't? Jim Blades died recently, and he's an endorsed witness for us. Was, I think you'll find—

The state objected to further questioning about Mr. Blades. Defense counsel said he wanted to determine whether the veniremembers were familiar with Mr. Blades' death. The state argued such questioning would be irrelevant.

When asked by the court to explain how the questioning would be relevant, defense counsel refused to explain. He said he would have to reveal his evidence to explain the relevance of the questioning. He said he would tell the court what his evidence was and how the questioning was relevant, but he would not tell the prosecutor. The trial court then sustained the state's objection.

Defendant now argues the trial court's refusal to allow him to ask the further questions about Mr. Blades' death prejudiced him. It prevented him, he argues, from knowing to his satisfaction whether any of the veniremembers knew of Mr. Blades or his friends. And, therefore, he did not have the information to properly exercise his strikes.

Our standard of review is well settled. The trial court has broad discretion to control the scope of examination of prospective jurors. *State v. Lottmann,* 762 S.W.2d 539, 540 (Mo.App.1988). We will not interfere with the exercise of that discretion

absent an abuse of discretion and a real probability of injury to the complaining party. *State v. Carter*, 771 S.W.2d 844, 845 (Mo.App.1989). We find no abuse of discretion here.

At trial, defendant did not give the trial court and the state the opportunity to hear why he felt continued questioning about Mr. Blades would be relevant. He did indicate a willingness to tell the trial court why his questions were relevant, but he was not going to give the state an opportunity to respond. The trial court would have had to make a decision on the relevance of the questions without hearing argument from the state. Such a practice would undermine the adversarial nature of our legal system. Therefore, the trial court did not err in requiring defendant to show the relevance of these questions he wanted to ask and in refusing to allow the questions without such showing.

### III

■ Defendant challenges the trial court's sustension of several objections the state made during defendant's opening statement. Defendant's argument centers on the following portion of his opening statement:

> [Defense Counsel]  I expect the evidence to show that Mr. Blades was in the automobile that evening and the marijuana was his and that he was prepared to say that Mr. Blades died—

The prosecutor objected that defense counsel was about to describe a hearsay statement made by Mr. Blades. The trial court noted that it did not know if defense counsel was going to mention a statement by Mr. Blades because counsel "didn't get that far." Defense counsel explained that he was going to tell the jury that Mr. Blades was not going to testify because he died in an accident. Defense counsel finished by saying: "If it was his marijuana and his LSD, I'd want him to say that."

On appeal, defendant argues the prosecutor misunderstood what defense counsel said. Defendant construes his counsel's statement as meaning: "that he (defendant) was prepared to say that Mr. Blades died." The state argues defense counsel was about to say: defendant will testify that Mr. Blades would have said the coat and drugs were his if he were alive to testify.

■ The scope of opening statement is largely within the discretion of the trial court. *State v. Brooks*, 618 S.W.2d 22, 24 (Mo. banc 1981). An opening statement should not include evidence which is plainly inadmissible upon objection. *State v. Browner*, 587 S.W.2d 948, 953 (Mo.App. 1979). The trial court was within its discretion in concluding defense counsel was going to relate a hearsay statement, and, thus, it properly sustained the state's objection. *See State v. Hurst*, 612 S.W.2d 846, 853 (Mo.App.1981).

### IV

Defendant argues the trial court erred in granting the state's motion in limine. In its motion, the state made three requests. We address two of them here.

The state sought (1) to prohibit defendant from mentioning that the police did not look for fingerprints on the evidence seized from defendant, and (2) to prohibit defendant from arguing the issue of punishment to the jury. Before trial, the court granted both of these requests.

### IV

#### (1) Fingerprint Issue

■ Defendant's argument on the fingerprint issue is neither clear nor explicit. At trial, during cross-examination of Officer Gaddie, the arresting officer, defense counsel asked Gaddie whether he had attempted to obtain fingerprints from the seized drugs. The state objected, and, out of hearing of the jury, the trial court informed defense counsel that it would seriously consider contempt charges against him at the conclusion of the evidence. The trial court did not expressly rule on the state's objection.

On appeal, defendant argues the court "treated its prior ruling [on the motion in limine] as absolute" and, therefore, incor-

rectly "treated the attempt of [defense counsel] to properly represent his client ... as an affront to the Court, creating an atmosphere ... of threat and fear as opposed to freedom." The precise prejudice worked against defendant, however, is not defined. More important, defendant's argument is misdirected and, thus, misses the mark.

■ A ruling on a pre-trial motion in limine is interlocutory and can be reversed during trial. *State v. Silcox*, 694 S.W.2d 755, 756 (Mo.App.1985); *State v. Hemphill*, 669 S.W.2d 633, 635 (Mo.App.1984). The issue here, however, is the method by which the court's pre-trial ruling is to be tested during trial.

No specific method is required. However, in dicta, our Supreme Court has suggested a proper method. "[A]n objection must be made at trial when the evidence is offered or the reference is made, *preferrably (sic) outside the hearing of the jury*, in order to preserve for appellate review the ruling made thereon." *State v. Evans*, 639 S.W.2d 820, 822 (Mo.1982). (emphasis added) Presentation outside the hearing of the jury would preserve the issue for appeal and would avoid exposing the jury to the presumably prejudicial matter. Allowing a party to raise the issue at trial by merely asking about the excluded matter in the jury's presence would undermine the value of the motion in limine as a device to keep alleged prejudicial material from the jury. The court's action, therefore, was not error.

Defendant concedes he would not have been permitted to argue to the jury the failure of the state to obtain fingerprints, *State v. Boyd*, 688 S.W.2d 791, 794 (Mo. App.1985); and, thus, implicitly concedes his question whether the state obtained fingerprints was not relevant. *Id.*

■ Defendant argues, however, that the police here should have checked for fingerprints because they saw defendant holding the subsequently seized drugs. Neither logic nor law supports this argument. When a defendant is caught with contraband in his possession, his finger-prints are neither necessary nor essential to proof of his possession.

## IV

### (2) Punishment Issue

As noted, prior to trial, the court ruled that defendant would be prohibited from arguing punishment to the jury because defendant was charged as a prior and persistent offender and, therefore, punishment was not an issue to be considered by the jury.

■ Defendant argues the trial court should not have ruled on this part of the state's motion in limine prior to trial, but should have waited until the close of all the evidence. During trial, defendant argues, the state was allowed to ask a number of questions about defendant's prior convictions and, therefore, defendant reasons, he should have been allowed to argue punishment to the jury.

■ The problem with defendant's argument is twofold. The record reveals no request from defendant to the trial court that it reconsider its pre-trial ruling. The issues in a motion in limine must be raised at trial to preserve them for appeal. *State v. Hemphill, supra* 669 S.W.2d at 635.

More important, defendant testified. Therefore, the state may and did impeach him by showing his prior convictions. *State v. Silcox*, 694 S.W.2d at 756. Defendant could have introduced evidence or made an argument to rebut the impeachment, but that does not mean the issue of punishment itself would have been created for consideration by the jury.

■ Defendant was charged as a prior and persistent offender. Therefore, punishment was not an issue for the jury. Section 557.036 RSMo 1986; *State v. Miller*, 699 S.W.2d 140, 141 (Mo.App.1985); *State v. Ailshire*, 664 S.W.2d 630, 634 (Mo. App.1984).

## V

■ Defendant argues the trial court erred in denying his request for a mistrial when the prosecutor asked about a prior

charge against defendant. On cross-examination of defendant, the following occurred:

> [The Prosecutor] On the 23rd of September, 1981, in the Circuit Court of Randolph County, did you plead guilty to the felony charge of possession of more than 35 grams of marijuana and were sentenced to three years in the Department of Corrections?
>
> A. Yes, I pleaded guilty, and I got probation on that.
>
> Q. Okay. And you had earlier been charged with sale, and that was reduced to possession?
>
> A. That was the same incident.
>
> Q. It was a plea bargain?
>
> A. Yes.
>
> Q. And that was over 35 grams?
>
> [Defense Counsel] Judge, may we approach the bench?
>
> The Court: You may.

Defendant moved for a mistrial, arguing the prosecutor was suggesting defendant had committed crimes other than those of which he was convicted. Defendant now contends the prosecutor improperly "interjected into the trial the question of *sale* of marijuana knowing full well ... the [prior] conviction was for *possession*." (emphasis his)

█ The only remedy defendant sought was a mistrial. The declaration of a mistrial is a drastic remedy and should only be used in the most extraordinary circumstances. *State v. Sidebottom*, 753 S.W.2d 915, 919–20 (Mo. banc 1988), *cert. denied* 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988). We review the denial of a motion for a mistrial only for an abuse of discretion. *State v. Boyd, supra*, 688 S.W.2d at 793.

The court did not abuse its discretion here. The details of defendant's prior charge elicited here did not imply defendant had been convicted of the sale of marijuana rather than the possession of it. At worst, the examination tells the jury the charge of sale against defendant was reduced to possession. The jury could rea-

sonably believe the state simply overcharged defendant. Moreover, although the prosecutor did refer to defendant's prior conviction in his closing argument, he made no reference to defendant being a dealer or seller of drugs. The court's denial of the requested mistrial was well within its discretion. *E.g., State v. Hadley*, 736 S.W.2d 580, 593 (Mo.App.1987).

## VI

█ Defendant also challenges the trial court's rulings on alleged violations of discovery Rule 25.03 by the state. First, defendant argues the state failed to disclose the scope of the testimony of an expert witness endorsed by the state, Charles Durham. Defendant requested the names and addresses of the state's witnesses and any reports or statements of experts, including results of physical examinations and of any scientific tests. In its response, the state listed Mr. Durham, "Mo. St. Highway Patrol Lab, Jefferson City, MO." and attached to the response a report Mr. Durham made summarizing his findings that the bag taken from defendant contained marijuana and LSD.

At trial, however, Mr. Durham not only testified about the substances seized from defendant, he also testified, over defendant's objections, about the correlation between blood alcohol readings obtained through breath analysis and readings obtained through blood tests. Defendant correctly points out the state did not disclose that the witness was going to testify about the correlation between breath analysis and blood tests. However, as the state points out, it was under no obligation to provide a summary of the witness' testimony. *State v. Motley*, 740 S.W.2d 313, 319 (Mo.App. 1987).

█ Defendant next argues the trial court erred in allowing a mid-trial endorsement of Mr. William Marbaker. Defendant argues he did not know prior to trial that Mr. Marbaker would testify.

The Legal File on appeal contains a copy of a letter from the prosecuting attorney to the law firm representing defendant supplementing the state's answer to defen-

dant's motion for discovery. This letter announces the prosecutor's intent to seek leave to endorse Mr. Marbaker. Included is a report of a blood alcohol test Mr. Marbaker did on defendant's blood. The letter is dated July 21, 1988. Defendant's trial was on February 16, 1989. Defendant *did not question whether the letter was mailed.* The court found the record showed notice to defendant and so do we. *See* Rule 20.04.

■ Defendant also contends the trial court erred in allowing Mr. Marbaker to testify to results of a test that was not disclosed to defendant. Mr. Marbaker testified a test on defendant's blood for common drugs of abuse, including marijuana, showed no evidence of those drugs. The Legal File does not show the state disclosed this test to defendant. However, the trial court has discretion to fashion the appropriate remedy for a discovery violation. *State v. Bryant,* 705 S.W.2d 559, 561 (Mo.App.1986). Absent a showing by defendant that the failure to produce resulted in fundamental unfairness or prejudice to his substantial rights, we will affirm. *Id.; State v. Davis,* 556 S.W.2d 45, 48 (Mo. banc 1977).

The only showing of prejudice defendant makes is his speculative claim that disclosure "may very well have affected" his preparation for trial. This is well short of the reasonable likelihood of an effect on the outcome that defendant must demonstrate to show fundamental unfairness. *State v. Grant,* 784 S.W.2d 831, 835 (Mo.App.1990).

■ Defendant also mentions *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and suggests the prosecutor's failure to disclose the report may have been a violation of the mandate of *Brady.* This argument is not in defendant's Point and is not developed in the argument portion of the brief beyond a passing reference. Issues raised in the argument portion of a brief but not in a point relied on are not preserved for appeal. Rule 84.04(d), *Washington v. State,* 772 S.W.2d 728, 729 (Mo.App.1989).

Moreover, it is not clear this case is controlled by *Brady.* The Supreme Court held in *Brady* that prosecutorial suppression of material, exculpatory evidence violates due process. 373 U.S. at 87, 83 S.Ct. at 1196. Here, however, the alleged exculpatory evidence was revealed during trial. Thus, the analysis from *Brady,* involving the effect of nondisclosure of evidence until after a trial, *Id.* at 84, 83 S.Ct. at 1195, may not be applicable. Defendant has not suggested any standard for assessing the alleged nondisclosure different from *Brady* and its progeny, and we are not called upon to make defendant's arguments for him.

In *Brady,* the Court held suppression by the prosecutor of evidence favorable to an accused after a request for such information violates due process where the evidence is material either to guilt or punishment. 373 U.S. at 87, 83 S.Ct. at 1196. The standard for materiality was recently rearticulated in *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682, 105 S.Ct. at 3383.

### VII

■ Defendant argues the prosecutor's closing argument "interjected" facts not in evidence. Defendant objects to a statement by the prosecutor which, defendant argues, told the jury that an expert testified defendant had consumed six beers. Defendant apparently refers to the following statement in the prosecutor's closing argument:

What Mr. Durham told you was the truth that he had to have—he had to have consumed at least six beers (inaudible).

The state may argue inferences from the evidence if the inferences are reasonably drawn from the evidence. *State v. Clemmons,* 753 S.W.2d 901, 909 (Mo. banc 1988), *cert. denied* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). At trial, Mr. Dur-

ham testified a person would have to drink five beers to reach a blood alcohol level of .10%. According to the blood test, defendant's blood alcohol level was .18% and the breath analysis showed a level of .136%. The inference here that defendant must have consumed at least six beers is reasonably drawn from the evidence. *Id.*

■ Defendant also challenges various portions of the state's closing argument contending the prosecutor's statements had the effect of shifting the burden of proof to the defendant. Defendant contends the prosecutor argued that defendant should have called witnesses to corroborate his testimony that other people had been driving his car, and the prosecutor also argued, defendant contends, that defendant should have a state trooper as a witness to corroborate defendant's testimony that he had failed field sobriety tests before. The prosecutor also argued that defendant had the right to call witnesses and, from his failure to do so, the jury could infer the witnesses would not have helped him.

■ These claims of error have not been preserved for appeal. Defendant did not object during trial that the prosecutor's arguments improperly shifted the burden of proof. In addition, he did not raise this issue in his motion for a new trial. These actions are required to preserve an issue for appeal. *State v. Moiser*, 738 S.W.2d 549, 562 (Mo.App.1987).

Moreover, an *ex gratia* review of defendant's claims shows they have no merit. The state may comment on defendant's failure to present evidence. *State v. Wynn*, 666 S.W.2d 862, 866 (Mo.App.1984). The prosecutor's arguments here may be fairly construed as doing just that.

### VIII

Finally, defendant argues the trial court erred in not granting his motion for a new trial because the court was biased and prejudiced against him. We have read the transcript. It shows the issues at trial were hotly contested by both parties. It also shows the trial court remained impartial in addressing both counsel and in its rulings.

Judgment affirmed.

SMITH and GRIMM, JJ., concur.

### APPENDIX A

I, Ronald L. Wolfe want to make the following statement

Q. Was that your marijuana [cigarette] in the car?

A. [N]o.

Q. Where did it come from?

A. I don't know, other people have been driving my car.

Q. What about the marijuana in the bag that you pulled from the back of your pants?

A. I found it in my jacket and didn't know what it was. I don't normally wear this jacket & I think someone else put it in there. I was afraid of officers finding what might be in there.

Q. What about the papers in your pocket?

A. I didn't know they were there.

Q. Who do you think the marijuana & papers belong to.

A. I have no idea.

Q. How much marijuana do you think was there?

A. It's [beyond] my knowledge, I have no idea.

Q. When was the last time someone drove your car?

A. [T]he day before yesterday.

Officer Gaddie asked these questions & wrote this for me.