STATE of Missouri, Plaintiff–
Respondent,

v.

George ENKE, Defendant–Appellant.

No. 19349.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 30, 1994.

Rosalynn Koch, Office of the State Public Defender, Columbia, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GARRISON, Presiding Judge.

Appellant was charged, pursuant to § 566.030.3, RSMo Supp.1992, with having committed the class B felony of rape by having sexual intercourse with a person less than fourteen years of age to whom he was not married. This appeal is from his conviction and sentence, as a prior offender, to fifteen years' imprisonment. He does not contest the sufficiency of the evidence to support the conviction, but alleges that the trial court erred (1) in permitting opinion testimony from a witness whom the State had not specified, in discovery responses, would be called as an expert, and (2) in permitting testimony which constituted evidence of prior uncharged crimes and misconduct.

At the time of the alleged offense, Appellant and his ex-wife, Harriet Enke, were living together. The victim, thirteen-year-old G.J., was one of Harriet's children from another marriage who had been removed from the home and was at the time residing with her older sister, Lilly.

On Thursday, October 29, 1992, Appellant and Harriet picked up G.J., who was not in school because of a teachers' conference, and took her, along with Harriet's three-year-old son, to a mobile home they had recently occupied. The mobile home, however, was not yet equipped with several conveniences including running water and sewer. The following day, G.J. assisted in cutting weeds around the mobile home and digging a ditch for a sewer line before her mother left for work at approximately 3:00 p.m., leaving her and her brother with Appellant.

G.J. testified that after going to bed on a couch that evening, Appellant approached her, pulled her quilt off, pulled down her panties, and told her to take off her nightgown. In response to her attempts to repel him, Appellant threatened to choke her and get her pregnant if she did not calm down. After kissing G.J. on the mouth and breasts, Appellant attempted to penetrate G.J. while she was on her back. In response to her

complaints that it was painful, he told her to get on her hands and knees and penetrated her from that position. Appellant later permitted her to go to the restroom to clean up after she told him that she was bleeding.

G.J. testified that when she returned to the living room she began crying, at which time Appellant told her to shut up, that it wouldn't happen again, and that if she told anyone, her brother would be placed in foster care, her mother would lose the trailer, and he would go to jail for 40 to 60 years. When G.J. told Appellant that he should not have done what he did, he took some clothes and left the trailer with her brother.

Harriet was told by Appellant that G.J. was accusing him of rape after she found him and her son on the highway at 3:00 a.m. as she was returning from work. When they returned to the trailer, G.J. confirmed the accusation to Harriet who then, along with Appellant, took G.J. to a hospital for an examination. G.J. was first examined and interviewed by a nurse. A more thorough examination was later conducted by Dr. John Elliott who testified that G.J.'s vaginal tissues had marked redness and bleeding, along with tears in both the upper and lower portions of the vagina.

A deputy sheriff was called to the hospital where he interviewed both G.J. and Harriet but was unable to locate Appellant. After leaving the hospital, Harriet took G.J. to Lilly's, and later that evening she and Appellant left Missouri intending to go to California. The trip was interrupted, however, in Arizona where their car malfunctioned and Appellant was arrested for the incident in question.

At trial, in addition to the testimony of G.J. and Dr. Elliott, the State's evidence consisted of a nurse, a social worker, and the deputy, each of whom described G.J.'s emotional condition that night, and her statements concerning the events in question. As the only witness for the defense, Harriet, in addition to the testimony which will be discussed later in this opinion, said that her daughters had been jealous of her marriage to Appellant, had done things to try to split them up, and that G.J. had been guilty of lying during the

time she lived with her. She also testified, on cross-examination, that she "took her to the hospital because she said she had been raped."

In his first point, Appellant contends that the trial court abused its discretion in admitting opinion testimony by Dr. John Elliott because the State violated Rule 25.03 [1] by not disclosing that he would testify as an expert. He argues that as a result he was not prepared to rebut Dr. Elliott's opinions that it was extremely doubtful that G.J.'s injuries could have been self-inflicted, that they were less than twelve hours old, and that they were consistent with G.J.'s testimony that she had been penetrated while on her back and also while on her hands and knees.

■ Rule 25.03 provides, in pertinent part:

(A) ... [T]he state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part or all of the following material and information within its possession or control designated in said request:

(1) The names and last known addresses of persons whom the state intends to call as witnesses at any hearing or at the trial, together with their written or recorded statements, and existing memoranda, reporting or summarizing part or all of their oral statements;

. . . .

(5) Any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons.

This rule and Rule 25.12, which allows the defense to depose potential witnesses, are designed to prevent surprises at trial. *State v. Whitfield,* 837 S.W.2d 503, 508 (Mo. banc 1992).

■ Appellant argues in his brief that nine months prior to trial he made a request for discovery which included "a request for any experts and their reports, pursuant to Rule 25.03(a)(5)." The record presented to us does not contain a copy of Appellant's Rule 25.03 request, but the trial transcript does include a statement by the trial court that one of the requests for disclosure was for "[a] list of any expert witnesses and any reports or statements of such experts made in connection with this particular case which the State intends to use at any hearing or at trial including results of physical or mental examinations and of scientific tests, experiments or comparisons." [2]

We glean from the trial transcript that Dr. Elliott's name was disclosed as a potential witness, although there was no specific delineation that he would express expert opinions. Additionally, his medical records were produced as a part of the disclosure of documents. Although those documents are also not filed with this court, they allegedly did not reveal that the doctor would testify to the opinions about which Appellant complains.

■ In the instant case, Appellant's contentions under his first point are without merit for several reasons. For instance, it is not disputed that Dr. Elliott was identified as a witness the State intended to call at trial. Appellant cites no authority holding that under Rule 25.03 a disclosure concerning witnesses to testify must also contain a designation of those who may testify as "experts." To the contrary, the state is not required to categorize anticipated witnesses and their testimony into various classifications. *State v. Feast,* 588 S.W.2d 158, 161 (Mo.App.E.D. 1979); *State v. Tate,* 543 S.W.2d 514, 518 (Mo.App.E.D.1976). In addition, in the instant case, the subject witness was identified as "Dr. John Elliott." This, together with the medical records relating to the examination of G.J. signed by Dr. Elliott, would have made it apparent that his testimony would likely be as a medical expert. In addition, Appellant was entitled to depose Dr. Elliott to determine the full extent of his anticipated testimony, but apparently did not do so.

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R.

2. Rule 25.03(A)(5) does not specifically authorize a request to identify which of the witnesses will testify as "expert witnesses" in addition to producing their reports. No issue is raised, and we do not express an opinion, about whether a defendant is entitled to relief by reason of nondisclosure pursuant to a request which may exceed the scope authorized by the rule.

■ The fact that the medical reports themselves may not have contained all of the opinions to which Dr. Elliott testified is not decisive. There is no indication in the instant record that the State did, in fact, possess any document, as described in Rule 25.03(A)(1) or (5), containing the opinions by Dr. Elliott about which Appellant complains. Rule 25.03 requires the state to disclose the names and addresses of its witnesses and existing written statements or memoranda but it does not require a summarization of a witness' testimony. *State v. Kerfoot,* 675 S.W.2d 658, 661 (Mo.App.E.D.1984). See also *State v. Feast,* 588 S.W.2d at 161, and *State v. Tate,* 543 S.W.2d at 518, both decided under former Rule 25.32(A)(1) which was the same as present Rule 25.03(A)(1). The instant case is similar to *State v. Wolfe,* 793 S.W.2d 580 (Mo.App.E.D.1990), where the state identified as a potential witness an employee of the Highway Patrol lab and attached his report. At trial the witness testified to matters within his field of expertise which were not in the report. The Eastern District of this court found no error, saying the state "was under no obligation to provide a summary of the witness' testimony." *Id.* at 587.

■ Even if the State had failed to make a required disclosure, it is well settled that whether to impose a sanction, and the nature thereof, is a matter within the discretion of the trial court. *State v. Wolfe,* 793 S.W.2d at 588; *State v. Kerfoot,* 675 S.W.2d at 660. Pursuant to Rule 25.16, the trial court may order disclosure, grant a continuance, exclude the evidence, or enter such other orders as it deems just under the circumstances. The trial court is to tailor the remedy to alleviate harm to the defense from failure to disclose. *State v. Whitfield,* 837 S.W.2d at 507. In the event the state violates the discovery rules, the decisive question is whether the failure to disclose resulted in fundamental unfairness or prejudice to the defendant. *State v. Gaskin,* 618 S.W.2d 620, 624 (Mo.1981).

■ In the instant case, Appellant argues that the trial court abused its discretion in not excluding the evidence or, in the alternative, granting a continuance. Appellant, however, objected to portions of the doctor's testimony but requested no other relief, such as a continuance in order to depose or interview the doctor.[3] Failure to do so can be properly considered by the appellate court in determining whether the trial court abused its discretion. *See State v. Engel,* 859 S.W.2d 822, 829 (Mo.App.W.D.1993); *State v. Gaskin,* 618 S.W.2d at 624. In *State v. Lahay,* 687 S.W.2d 604 (Mo.App.E.D.1985), the defendant contended that the state, in violation of Rule 25.03(A)(9), had not disclosed that a witness had been unable to identify defendant from a group of photographs. The court held that failure to make that disclosure was a violation of the rule but that under Rule 25.16 the court could have, if requested, granted a continuance in order to voir dire the witness out of the hearing of the jury. In holding that the trial court did not err in failing to declare a mistrial, the court said: "This continuance could have eradicated any inadequacy of cross-examination in relation to the reliability of the identification evidence. No effort was made to obtain a continuance." *Id.* at 605.

■ It is also significant that Appellant never contended at trial that he was surprised by or was not prepared to meet the testimony of Dr. Elliott about which he complains. The trial court should not be reversed in the absence of a showing that there was a fundamental unfairness or prejudice. *State v. Wolfe,* 793 S.W.2d at 588. Appellant has not done so in the instant case. His first point is, therefore, denied.

■ In his second point, Appellant contends that the trial court erred in permitting G.J. to testify that when she told Harriet what had happened and showed her a blood spot on the couch, Harriet said to Appellant, "Why did you do it to me, why did you do it again?" Although Harriet denied making that statement, she did testify on cross-examination that another daughter had report-

---

**3.** Although not raised by the State, we note that the doctor answered affirmatively about finding evidence of penetration before any objection was made. Additionally, many of the other opinions about which complaint is now made were given without objection.

ed that Appellant had raped her. She was also impeached with a statement she made in an ex parte proceeding against Appellant after denying that he had previously abused her and her children by striking them. He argues that this testimony was hearsay and constituted evidence of prior uncharged crimes and misconduct. He acknowledges, however, that trial counsel did not object to the evidence in question and, therefore, he requests a review for plain error.

■ A plain error review may be considered in the discretion of the court when it finds that manifest injustice or miscarriage of justice has resulted. Rule 30.20. In asserting plain error, a defendant assumes a greater burden than when he asserts prejudicial error. *State v. Clements*, 849 S.W.2d 640, 644 (Mo.App.S.D.1993). In doing so, a defendant must not only show that prejudicial error resulted, he must also show that the error so substantially affected his rights that manifest injustice or a miscarriage of justice will inexorably result if left uncorrected. *Id.*

■ Although there was no objection from the defense to any of this testimony, Appellant contends that the testimony of sexual abuse of another child, as well as physical abuse of the children, amounted to evidence of separate and distinct crimes requiring a reversal. He argues that evidence of separate and distinct crimes is not admissible unless it has the legitimate tendency to establish a defendant's guilt of the charge for which he is on trial, citing *State v. Burr*, 542 S.W.2d 527, 530 (Mo.App.S.D.1976). Generally, evidence of other uncharged misconduct has a legitimate tendency to prove the specific crime charged when it tends to establish: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the person charged with the commission of the crime on trial. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). Appellant contends that the evidence in question does not tend to establish any of those factors.

The State argues that it was justified in its cross-examination of Harriet, noting that she testified on direct that she was "shocked" when told by Appellant that G.J. was accusing him of rape and that G.J. had lied on prior occasions. It contends that the testimony that one of her other daughters had also accused Appellant of rape and that she had stated in the ex parte proceeding that Appellant had physically abused her and the other children affected Harriet's credibility.

This court has recognized that evidence of uncharged crimes, even if potentially relevant to credibility, may be so prejudicial as to require a reversal. *State v. Atkinson*, 835 S.W.2d 517 (Mo.App.S.D.1992). In *Atkinson*, this court, in reversing the conviction, noted, however, that the defendant made timely objections to the testimony and that the evidence of guilt in the case was not otherwise strong. *Id.* at 520.

Because of the absence of objections in the instant case, we are restricted to a plain error review to determine if manifest injustice or a miscarriage of justice has occurred. In that regard, it is appropriate to consider the strength of the State's case aside from the evidence complained of. A number of cases stand for the proposition that erroneous admission of evidence of other crimes does not require reversal if the evidence of guilt of the crime charged is strong or overwhelming. *See State v. Coleman*, 857 S.W.2d 363, 365–366 (Mo.App.E.D.1993); *State v. Sanders*, 748 S.W.2d 835, 836 (Mo.App.E.D.1988); *State v. West*, 743 S.W.2d 592, 593–594 (Mo.App.E.D.1988).

■ The State's evidence in the instant case consisted of G.J.'s descriptive testimony concerning the occurrence; Dr. Elliott's testimony that G.J. had injuries consistent not only with having been recently penetrated, but also from positions described by her; the testimony of a nurse, social worker and deputy sheriff, all of whom testified to G.J.'s demeanor and statements describing the incident; evidence from which the jury could have believed that Appellant left the hospital when the deputy sheriff arrived; and evidence of Appellant and Harriet's flight from Missouri for reasons which she could not

explain.[4] We consider the evidence to have been sufficiently strong so that under the circumstances of this particular case we are unable to conclude that a manifest injustice or miscarriage of justice occurred as a result of the evidence complained of. Point II is, therefore, denied.

Judgment affirmed.

PREWITT and PARRISH, JJ., concur.

4. When asked why she and Appellant left Missouri later that day, her explanation was, "because I just left." Evidence concerning a defendant's flight from the jurisdiction is relevant as indicating a consciousness of guilt. *See State v. Rodden*, 728 S.W.2d 212, 219 (Mo. banc 1987); *State v. Perryman*, 851 S.W.2d 776, 779 (Mo.App. E.D.1993); *State v. Sanders*, 748 S.W.2d at 836.